STATE OF MISSOURI, EX REL., W. L. GEHRS, APPELLANT, v. PUBLIC SERVICE COMMISSION OF MISSOURI, RESPONDENT.—114 S. W. (2d) 161.

Kansas City Court of Appeals. January 10, 1938.

*Frank B. Williams, June R. Rose* and *Almon Ing* for appellant.

*James P. Boyd* and *Daniel C. Rogers* for respondent.

BLAND, J.—This is an appeal from a judgment, on a writ of review, decreeing that the orders of the Public Service Commission, in a cause before it, numbered T-3537, ordering that a Certificate of Convenience and Necessity and Interstate Permit No. T-605, then and theretofore possessed by appellant, W. L. Gehrs, doing business as the Ozark Trunk Lines (hereinafter referred to as Gehrs) be transferred to the Banner Trunk Lines, Inc., and merged with a Certificate of Convenience and Necessity, No. T-161, held by the latter company, and retired. The facts show that W. L. Gehrs operated a trunk line from St. Louis to Joplin and the Banner Trunk Lines, Inc., from St. Louis to Springfield; that Gehrs being desirous of selling his equipment and business and having his Certificate of Convenience and Necessity transferred to the Banner Company, on May 12, 1934, entered into the following agreement:

"This agreement made on this 12th day of May, 1934, by and between Banner Trunk Lines, Inc., of Lebanon, Missouri, party of the first part, and W. L. Gehrs, doing business under the trade name of Ozark Trunk Lines of Springfield, Missouri, party of the second part, witnesseth:

"Party of the first part agrees to purchase and party of the second part agrees to sell to first party all of the equipment used by it in carrying on its trucking business, including the good will of the said business. In consideration whereof the first party agrees to deliver to the Industrial Loan & Investment Company of Springfield, Missouri, 50 (Fifty) shares of its capital stock (common stock), 25 (twenty-five) shares thereof to be issued in the name of W. L.

Gehrs and Opal May Gehrs and the other 25 (twenty-five) shares to be issued in the name of Ray C. Alexander, and to assume all indebtedness for equipment of W. L. Gehrs and indebtedness to the Industrial Loan and Investment Company, and to assume all travel orders of second party, the unpaid balance due the State of Oklahoma for the Oklahoma permit of second party, and all unpaid insurance premiums of second party. The first party agrees to advance to second. party approximately $600.00 (six hundred dollars) to be used by second party in taking up C. O. D.'s, to be charged to second party's account and paid back to the company out of second party's share of the profits.

"It is further agreed that the stock certificate for 25 (twenty-five) shares of the common stock of the first party which are to be issued to Ray C. Alexander are to be pledged with the Industrial Loan & Investment Company as collateral security to the indebtedness to that company which by this agreement is to be assumed and is assumed by the Banner Trunk Lines, Inc. It is agreed that after the indebtedness to the Industrial Loan & Investment Company shall have been paid by the Banner Trunk Lines, Inc., said 25 (twenty-five) shares of stock are to be surrendered and in lieu thereof $\frac{1}{3}$ (one-third) to be issued to J. R. Schmidt, $\frac{1}{3}$ (one-third) to Everett Hawkins and $\frac{1}{3}$ (one-third) to W. L. Gehrs and Opal May Gehrs. The second party agrees to immediately make proper assignment on truck and trailer titles to first party.

"The first party is to make application to the Public Service Commission of the State of Missouri, to have transferred to it all Missouri permits both interstate and intrastate hereto issued and now in the name of Ozark Trunk Lines, and in this connection W. L. Gehrs agrees to assist first party in having such transfer made.

"It is further agreed that in the event the Public Service Commission should refuse to so transfer said permits or if first party should fail to deliver the stock as herein required then in either event this deal shall not be consummated and the present status of the parties shall be restored.

"This instrument has been executed in triplicate by J. R. Schmidt in behalf of first party by authority of its Board of Directors, and by W. L. Gehrs in his own behalf.

"(Signed) Banner Trunk Lines,<br>
"By J. R. Schmidt,<br>
President.<br>
"(Signed) W. L. Gehrs."

On May 15th, 1934, Gehrs and the Banner Trunk Lines, Inc., entered into another agreement as follows:

"This agreement made and entered into by and between W. L. Gehrs, doing business as Ozark Trunk Lines, of Springfield, Mis-

.souri, party of the first part, and Banner Trunk Lines, inc., a corporation of Lebanon, Missouri, party of the second part.

"Whereas, the party of the first part has sold his business, rights and assets used under Certificate of Convenience and Necessity No. T-605 to the party of the second part, and party of the second part has purchased said business, rights and assets, said sale being made subject to the approval of the Public Service Commission of Missouri.

"It is, therefore, agreed that the party of the first part will join with the party of the second part in a joint application requesting the Public Service Commission of the State of Missouri to transfer said Certificate of Convenience and Necessity No. T-605 from the party of the first part to the party of the second part.

"Witness our hands this 15th day of May, 1934.

"(Signed) W. L. Gehrs.
"(Signed) Banner Trunk Lines, Inc.,
"By J. R. Schmidt,
President."

The parties caused to be drawn up a bill of sale to the Banner Trunk Lines, Inc., conveying the office fixtures and office equipment belonging to the said Gehrs, which was used in his business. This instrument was dated May 26th, 1934, but it was not signed by Gehrs. On May 21st, 1934, Gehrs and the Banner Trunk Lines, Inc., filed a joint application with the Public Service Commission, praying that the Commission issue its order transferring Certificate No. T-605 from Gehrs to the Banner Trunk Lines, Inc., which held Certificate of Convenience and Necessity No. T-161. In this application it was stated that the Banner Trunk Lines, Inc., had acquired by sale the business, rights and assets of Gehrs operating under Cerificate of Convenience and Necessity No. T-605.

Before the hearing on this application was had a complaint was filed against Gehrs by one of his creditors. On June 2nd or 12th, 1934, the complaint was dismissed and a telegram was sent by mistake to the Banner Trunk Lines, Inc., by the Bus and Truck Department of the Commission, in which it was stated that the application for the transfer of the Certificate had been sustained. Upon that information the Banner Trunk Lines, Inc., took over the management and operation of the Ozark Trunk Lines. However, shortly after the sending of the telegram other protests were received to the transfer from other creditors of Gehrs and the order making the transfer was not issued and the case was set for hearing on June 22nd, 1934 on the application and the protests. The hearing was afterwards continued to June 27th, 1934 but on June 25th, 1934 Gehrs filed a motion to dismiss the application. This motion was based upon the fact that since the filing of the application Gehrs had been forced into involuntary bankruptcy. An amended motion to dismiss the application was later filed based upon

the ground that Gehrs "has definitely determined that he will not sell the business, rights and assets of the said Ozark Trunk Lines;" that he had found it impossible to work with the Banner Lines in the manner contemplated under the original contract of sale; that the contract of sale had never been consummated; that the stock which was to be transferred under the contract had not been transferred; that the bill of sale to the furniture had not been filed and would not be filed; that he stood ready to refund to the Banner Lines, Inc., the portion of the cost that had been paid to him.

At the hearing the weight of the evidence tended to show that the Industrial Loan & Investment Company mentioned in the contract of May 12th, 1934, was a finance company located in Springfield, making loans upon motor equipment, and that prior to said agreement it had made loans to Gehrs upon all of his equipment; that since the execution of the said agreement and the filing of the application with the Commission, the Banner Trunk Lines, Inc., had turned over fifty shares of its stock to the Industrial Loan & Investment Company, as provided for in said agreement; that arrangements had been made with the latter company for the payment of the C. O. D.'s, amounting to approximately $600.00, but there had been no request for payment; that the money was held by the Banner Trunk Lines, Inc., for payment; that it had paid to the State of Missouri for Gehrs the sum of $262.00, which he owed it for emergency travel orders; that it had signed notes to the Industrial Loan & Investment Company and, in turn for signing the notes and agreements of the Banner Trunk Lines, Inc., the Industrial Loan & Investment Company had guaranteed the payment of Gehr's insurance premiums; that the payment of the insurance premiums had either been made or assumed; that the Banner Trunk Lines, Inc., had assumed the indebtedness of Gehrs to the Industrial Loan & Investment Company; that the unpaid balance due the State of Oklahoma had been paid; that the motor equipment of Gehrs was being operated by the Banner Trunk Lines, Inc.; that most of his employees, including the truck drivers, had gone to work for the Banner Trunk lines, Inc., and were on its payroll; that Gehrs, himself, was drawing a salary from it. All of these things had apparently transpired prior to the filing of the motion of Gehrs to withdraw the application.

The evidence shows that little of the things required by Gehrs to be done under the provisions of said agreement of May 12th, 1934, had been performed by him. He had in operation at least 16 pieces of motor equipment and, while he caused to be notarized a transfer of the certificates of title to his equipment, he, in fact, at no time actually signed the same, except as to two trailers and these assignments were executed for the purpose of permitting the Industrial Loan & Investment Company to replevin one of the trailers. Gehrs

admitted in his testimony that the title to these two trailers was transferred by him to the Banner Trunk Lines. Otherwise, it would have been doubtful whether what was done could be construed as such a transfer. However, this is not of great materiality.

Section 5268, sub-section (c), (see Laws 1931, page 308) of the so-called Bus and Truck Law, provides that when a motor carrier to whom a Certificate of Convenience and Necessity has been issued "shall sell, transfer or assign the business, rights and/or assets of such motor carrier, or any part thereof, then and in that event the certificate originally issued to such motor carrier, or the part so sold, shall, upon application to the commission, if the commission shall be of the opinion that the purchaser thereof is in all respects qualified under the provisions of this act, to conduct the business of a motor carrier within the meaning of this act, be by the commission transferred to the purchaser. and be effective in like manner as though originally issued to such purchaser. *Provided,* no certificate shall ever be allowed a value in any sale or transfer, or assignment of business, rights or assets. In the event of such purchase, when there is a consolidation of one or more certificates of convenience and necessity and when through service will be beneficial to the public, such through service may be permitted."

Under the provisions of the statute of the Commission, in passing upon the application for the transfer of Gehr's certificate, was called upon (1st) to find whether there had been a sale, transfer, or assignment of the business, rights and/or assets of Gehrs to the Banner Trunk Lines, Inc., and (2nd) as to whether the Banner Trunk Lines, Inc., was in all respects qualified under the provisions of the act to conduct the business of a motor carrier within the meaning of the act.

There was no controversy before the Commission as to the qualifications of the Banner Trunk Lines, Inc., to conduct the business of a motor carrier but, in support of his right to withdraw the application, Gehrs contends that there was no sale, transfer or assignment of his business, rights and/or assets to the Banner Trunk Lines, Inc., and now insists that the agreement of May 12th, 1934, did not consist of a sale but merely an agreement to sell, an executory contract not constituting a sale until it became executed and that, in any event, he was within his rights in withdrawing the application as to him and that the Commission was without authority to refuse his request. In this connection he insists that under provisions of the statute the application to the Commission referred to therein must be made by the seller and not the purchaser; that, as the seller is the only necessary party in making the application, he has the right to withdraw it before it is acted upon by the Commission.

The statute does not state who shall make the application. But it appears that the Commission has made a ruling that both the seller

and the purchaser shall join in the application. This rule is a proper and reasonable one for the reason that both the seller and the purchaser are interested in the transfer of the certificates. Perhaps the buyer is principally interested, not only for the reason that he is the purchaser and must have a transfer of the certificate before he can lawfully take over the business of the seller, but it is required that the Commission be shown that he, in all respects, is qualified to conduct the business of a motor carrier. The buyer would be the person best situated to show his qualifications in the respects provided.

However, appellant contends: "If the Commission cannot coerce either party into joining in the application, which goes without saying, it cannot prevent either party from withdrawing from the application as any time prior to hearing and/or final submission of the cause."

Appellant likens his situation to that of the plaintiff in a civil action at law under the provisions of Section 960, Revised Statutes 1929. This section provides that: "The plaintiff shall be allowed to dismiss his suit or take a nonsuit at any time before the same is finally submitted to the jury, or to the court sitting as a jury, or to the court, and not afterward." This statute refers to courts and not commissions.

The Public Service Commission is not a court and has no judicial authority. It is merely a committee created by the legislature to make findings of fact and base orders thereon, which, if reasonable and within the powers of the Commission, may be enforced by the courts. It has no power to declare or enforce any principle of law or equity and is without jurisdiction to construe and enforce a contract between the parties to the hearing. [A. T. & S. F. Ry. v. Public Serv. Comm. of Mo., 192 S. W. 460; The State ex rel. v. Public Serv. Comm. of Mo., 277 Mo. 175; Lusk v. Atkinson, 268 Mo. 109; State ex rel. v. Brown, 19 S. W. (2d) 484; State ex rel. v. Public Serv. Comm. of Mo., 272 S. W. 957; State ex rel. v. Public Serv. Comm. of Mo., 308 Mo. 359.] This is the general rule but whether it is applicable under and by reason of the provisions of Section 5268 (c) *supra*, we need not say for reasons hereinafter to be given.

The Commission denied Gehr's motion to withdraw his application for a transfer of his Certificate of Convenience and Necessity and the question is presented as to whether a party, who has joined in an application of this kind, can withdraw because of a change of attitude on his part after the condition of the other party has been so altered as to result in great injury to him in case such a withdrawal is allowed. Going back to the analogy drawn by the appellant to the position of a plaintiff in a civil case, as provided by Section 960, Revised Statutes 1929, by that section of the statute plaintiff may dismiss his suit without permission of the court. The Supreme Court has construed this section of the statute in State ex rel. v. Wurdeman, 274 S. W. 380, 382, where it was said: "Corpus Juris notes the doctrine

(18 C. J. 1150-1152), and points out that a plaintiff may not be allowed to dismiss his suit, where such dismissal would injuriously effect anybody in interest in the subject-matter or the suit, whether such a person be a plaintiff or a defendant, or other person interested in the result.''

The facts in the case at bar show that the Banner Trunk Lines, Inc., has complied with practically, if not all of the things, required of it to be performed under the contract of May 12th, 1934; that it has paid out considerable money and has assumed obligations under the contract for the payment of other sums and has turned over a large amount of its capital stock. To permit the application for the transfer of the certificate to be withdrawn at this time, undoubtedly, would cause damage to the Banner Trunk Lines, Inc. The situation could not have been restored to the status quo without the consent of the Industrial Loan & Investment Company. While, this damage might, in a measure, be recovered in a suit at law, we do not think that this fact deprived the Commission of its right to refuse to be a party to the commission of the wrong. It does not require the application of any rule or principle of law or equity to arrive at the conclusion that such damage would be done. Any finders of the facts or any tribunal would be competent to arrive at that conclusion.

The burden was upon the appellant to show that he had a right to withdraw from the application. He failed to sustain that burden. The Commission rightfully refused to act when the facts before it indicated that to act would be making itself a party to a grave injustice. To have allowed Gehrs in this case to withdraw his application would have automatically withdrawn the application of the Banner Trunk Lines, Inc., over its objection. The Banner Trunk Lines, Inc., had rights in the matter which the Commission was within its power in recognizing.

The Commission having exercised a power within its jurisdiction in refusing to allow Gehrs to withdraw his application, did it properly exercise its authority, upon the hearing, in finding that there had been a sale, transfer, or assignment of the business, rights and/or assets of Gehrs, doing business as the Ozark Trunk Lines, or any part thereof, within the meaning of the statute, (see sec. 5268 (c))? The facts in this connection show that the parties had on May 12th, 1934, executed a contract which contemplated a sale and transfer, if it did not, in fact, constitute an actual sale and transfer, of what the parties considered the principal assets of Gehrs so far as his business of operating the Ozark Trunk Lines was concerned. The parties had thereafter executed an agreement recognizing the first agreement as constituting a sale of such business, right and assets of Gehrs and had filed a joint application with the Commission asserting that the business, rights and assets had been sold and transferred. Whether the Commission, in view of the provisions of Section 5268 (c) *supra,* had

authority or jurisidiction to construe the agreement of May 12th, 1934, as being either an agreement to sell, which is merely an executory contract and passes no title until executed (55 C. J., p. 245; Fulenwider v. Rowan, 136 Ala. 287; 55 C. J., p. 39), or a contract of sale, although there was no delivery of possession of the property therein described or the payment of the price at the time it was signed (see 55 C. J., pp. 529, 533, inclusive; Poling v. Flanagan, 41 W. Va. 191; Ward v. State, 45 Ark. 351, 353), or whether the contract was ambiguous and the conduct of the parties, especially by the execution of the agreement of May 15th, 1934, and the filing of the joint application, construed such agreement as constituting a sale we need not say. These points are ones that only a court of law could decide and the Commission, having no judicial authority, was not competent to pass upon the question. This because the Commission had before it the agreement of May 12th, 1934, the one of May 15th, 1934, and the application for the transfer of the certificate, the latter construing the agreement of May 12th, 1934, and it also was cognizant of the acts of the parties in carrying out the terms of said May 12th agreement. We are of the opinion that, in viewing these instruments, especially the one of May 15th, 1934, and the application, the Commission would have been justified in assuming (and need not have decided) that there had been a sale for both parties had so represented to it and had made a joint application for the transfer of appellant's certificate on that theory. If the Commission had no jurisdiction to construe the contract of May 12th, 1934, the parties knew it, and in coming before it with an application and other papers showing that the parties were agreed that there had been a sale, they should be bound by their conduct. As before stated, to have allowed Gehrs to change his position at the hearing would have worked a grave injustice on the Banner Trunk Lines, Inc.

It is insisted that the Commission had no authority to "retire" appellant's Certificate of Convenience and Necessity; that the statute, section 5269, Revised Statutes 1929 (see Laws 1931, p. 304), provides only that the Commission may suspend, revoke, alter, amend or cancel a certificate or grant a new one to another carrier over the same route. In this connection it is said: "If the order of the Commission did actually 'retire' appellant's certificate, then such retirement robbed the Commission of any power or authority to thereafter 'transfer' the certificate."

Courts do not view the orders of the Commission technically, but they are to be liberally construed so as to make them operative, if possible. [The State ex rel. v. Public Serv. Comm. of Mo., 277 Mo. supra, l. c. 192, 193.] A fair construction of the order of the Commission shows that there was an intention expressed therein to transfer the Certificates of Convenience and Necessity in question from Gehrs

to the Banner Trunk Lines, Inc., to merge it with the certificate of the latter and to retire it. The Commission, in its brief, states that it desired to have but one number for the certificates to cover the Banner route, which was for the convenience of its clerical force. We see nothing unreasonable in this. Certainly, appellant had no interest in having the certificate, which he asked to be transferred, or, its number remain in force.

The judgment is affirmed. All concur.