SUMMERS, Justice.
This case is ancillary to a proceeding instituted by the Louisiana Public Service Commission on December 1, 1954, directing Southern Bell Telephone and Telegraph Company to show cause why its “rates and charges for Louisiana intrastate telephone service should not be reduced and for such further order or orders as the Commission may deem necessary in the premises.” This resulted in Commission Order Number 6993 of June 30, 1956, which reads in pertinent part:
“It isj therefore, ordered:
“1. That Southern Bell Telephone and Telegraph Company shall reduce its annual gross intrastate operating revenues in the amount of $3,940,000.-00.
“2. This reduction shall be accomplished in the following manner:
“Effective September 1, 1956, all public telephone pay station rates shall be reduced' from ten cents (10^) to five cents (5‡) per local call.
“Effective August 1, 1956, all intrastate toll rates and charges shall be subject to a discount of 20 per cent per call.”
Subsequently, by its Order Number 6999 the Commission extended each of the two effective dates one month.
Order Number 6993 of the Commission was affirmed by this Court on appeal.[1] In *63 affirming the Order of the Commission this Court stated:
“If at any time in the future, the company’s investors are prejudiced in their enjoyment of a fair and equitable return, this Commission will be available for appropriate rate adjustments.”
Furthermore it was there said:
“As appears from its Order, the Commission has retained jurisdiction to act upon any revision of the amount of the reduction which can be based upon competent evidence. Thus, the door is not closed to the Telephone Company in the proceedings in which the order herein involved was rendered.”
Thereafter, in a purported compliance with Order Number 6993, Southern Bell proceeded to make refunds of 20 per cent on intrastate toll calls for the period commencing September 1, 1956, which was the period covered by the Order as subsequently amended,[2] and to reduce intrastate toll charges thereafter in accordance with said order except there were no refunds and no reductions on Southern Bell’s portion of toll calls jointly handled with the independent companies, when such calls originated at stations of the independent companies.
It having come to the attention of the Commission that refunds were not being made with respect to the Southern Bell portion of certain intrastate toll rates and charges imposed for the joint use of exchange and toll facilities owned either by Southern Bell or independent connecting companies, the Commission issued its order on August 5, 1957, to Southern Bell to show cause why refunds of the Southern Bell portion of such rates and charges should not be made. Before a hearing on this rule and on August 14, 1957, pursuant to the rights accorded them by this Court and the Commission itself, Southern Bell sought relief from the Commission for an increase in rates. On October 10, 1958, the Commission granted the Company an annual increase of $1,918,707 in gross earnings, though it did not make this effective because it was dissatisfied with Southern Bell’s expansion program. On appeal the District Court affirmed the increase ordered by the Commission. On further appeal to this Court we granted an additional increase in rates. See Southern Bell Telephone & Telegraph Co. v. Louisiana Public Service Commission, 239 La. 175, 118 So.2d 372.
In the meantime Southern Bell filed an answer to the Commission’s show cause order of August 5, 1957, respecting the refunds referred to above alleging in such answer that (1) the said toll rates and charges as to which refunds have not been made were rates and charges not collected from subscribers or customers of Southern Bell and that Southern Bell has no way of reducing such rates and charges since they are rates and charges collected by independent connecting companies. Southern Bell further alleged that (2) since the Commission has not previously fixed joint rates and charges for Southern Bell and independent connecting companies, for the Commission to now order reduction of even Southern Bell’s portion of such rates and charges is tantamount to fixing joint rates and charges without having afforded affected parties a hearing on the issues. Southern Bell further alleged that (3) the division of such toll rates and charges pursuant to contract between Southern Bell and independent connecting companies did *64 not constitute joint rates and charges, hut was the result of private contractual arrangements protected against impairment by the Constitutions of the United States and State of Louisiana.
A hearing was held on October 11, 1957, in response to the rule to show cause. No decision was forthcoming on this matter until August 8, 1960. The Commission then found that Southern Bell maintains toll message connections with a number of independent telephone companies throughout the State of Louisiana, such toll message connections utilizing various combinations of Southern Bell and independent company exchange and toll line facilities. Southern Bell and the independents charge for such interchanged message toll traffic on the basis of tariffs on file with the Commission. The share of each participant in such traffic rates is based on settlement provisions contained in “Connecting Company Traffic Agreements” in effect between Southern Bell and each of the independent companies with which such toll message interchanges are maintained. The basis of settlement provides that each company, through the application of formulas and procedures provided in the agreement, will determine the appropriate portion of its “sent paid” and “received collect” toll message revenue from use of joint facilities and will remit to the other company such determined portion of the joint revenue. Southern Bell, in making refunds for the period September 1, 1956, to April 1, 1957, has made refunds on intrastate toll messages utilizing joint facilities with independent companies where such messages originate in a Southern Bell exchange as “sent paid” message or terminate as “received collect” message, but has not made refunds on intrastate toll messages originating in an exchange of an independent connecting company on a “sent paid” basis or terminating there on a “received collect” basis. The Commission submits that as a result of the position taken by Southern Bell an anomalous and a discriminatory result has followed in that on a message originating on a Southern Bell exchange on a “sent paid” basis utilizing an independent connecting toll line a lower rate has been paid than on the identical message originating as a “sent paid” message in an independent exchange although utilizing the identical toll and exchange equipment.
The Commission found that the provisions of its Order Number 6993, as amended, directed that “all intrastate toll rates and charges shall be subject to a discount of 20 per cent per call” included the Southern Bell portion of intrastate toll rates and charges shared with independent connecting companies whether such toll rates are collected by Southern Bell on “sent paid” or “received collect” messages or whether such toll rates are collected by independent connecting companies as “sent paid” or “received collect” messages; since the reduction of 20 per cent was ordered in the intrastate rates and charges of Southern Bell as of September 1, 1956, all rates and charges subsequent thereto for use of Southern Bell facilities were thereby ordered reduced whether or not the rates and charges were directly collected by Southern Bell or were collected for Southern Bell by independent connecting companies pursuant to the terms of “connecting company traffic agreements” then in effect.
On the basis of the foregoing findings, the Commission issued its Order Number 8190, directing Southern Bell to make the applicable refunds, calculated on the basis of the settlements between Southern Bell and the independent companies involved and further directing that the refunds to those who have paid such joint toll rates and charges shall be distributed for Southern Bell by such independent connecting companies, Southern Bell, however, to pay all expenses in connection with such distribution of refunds. In its Order Number 8190, the Commission further took official notice of the fact that, contrary to the position taken by Southern Bell as outlined above and in the stipulation offered in evidence, Southern Bell has, following the increase of its toll charges allowed by Com *65 mission Order Number 8117 of May 5,1960, issued in compliance with the order of this Court, increased its joint toll rates with the independent telephone companies to the extent permitted by that order both as to calls originating in a Southern Bell exchange as a “sent paid” message or terminating as a “received collect” message and as to calls originating in an exchange of an independent connecting company on a “sent paid” basis or terminating there on a “received collect” basis.
Subsequently Southern Bell appealed the ruling of the Commission and sought an injunction in the Nineteenth Judicial District Court, where the Commission has its domicile, to prevent the enforcement of Order Number 8190, alleging that the Order was unlawful and invalid in that, (1) it seeks to impose joint rates retroactively without following the procedure prescribed by law for the establishment of such rates, (2) it seeks to impair the obligations of valid contracts between the company and the independent connecting companies in violation of the Constitution of the State of Louisiana, (3) it seeks to subject petitioner to unlimited and uncontrolled expense by efforts on the part of such companies to distribute refunds to their customers, or if they cannot do so, would permit such companies to obtain a windfall at the expense of petitioner, (4) it is confiscatory in that it would require a deduction in revenue in excess of that ordered by Order Number 6993, (5) it violates Article VI, Sec. 4 of the Constitution of Louisiana, LSA relative to fixing rates, and Article I, Sec. 2 of said Constitution by depriving petitioner of its property without due process of law.
A temporary restraining order was signed and the matter first came before the Court on a rule for a preliminary injunction. The rule was made absolute and there was judgment rendered ordering the issuance of a preliminary writ of injunction. The matter was then tried on its merits and a permanent injunction issued setting aside Order Number 8190 of the Commission.
From this judgment of the District Court the Commission is appealing.
What is in fact at issue here is a ruling construing an order of the Commission which is, in effect, an order interpreting an order previously issued by that body.
The question of construing and reviewing an order of the Commission is one properly before this Court, and this Court is not bound by the construction placed thereon by the Commission. Parker Gravel Co. v. Louisiana Public Service Commission, 182 La. 524, 162 So. 64; Northwestern Wisconsin Electric Co. v. Public Service Commission, 248 Wis. 479, 22 N.W.2d 472, 23 N.W.2d 459; State ex rel. Gehrs v. Public Service Commission of Missouri, 232 Mo.App. 1018, 114 S.W.2d 161; Deaton Track Line, Inc. v. Birmingham-Tuscaloosa-Mobile Motor Freight Line, 264 Ala. 345, 87 So.2d 421.
With regard to the first contention of Southern Bell that the order complained of seeks to impose joint rates retroactively without following the procedure prescribed by law for the establishment of such rates, it is to[1] be observed that the procedure established by law for the fixing of joint rates is found in LSA-R.S. 45 :1093 through 45:1096 which contain the Commission’s powers with respect to the establishment of joint through rates and charges for the transmission of messages and communications by telephone between points in Louisiana. However, these statutory provisions are not applicable here for the order of the Commission did not seek to establish joint rates but sought only to reduce the rates of Southern Bell. The joint rates contemplated by the quoted provisions of the Revised Statutes have not been established pursuant to that authority. It is inappropriate for Southern Bell to contend that the Commission’s authority to regulate its rates can be foreclosed by an agreement entered into by Southern Bell with the independent companies whereby settlements for use of interchange facilities are agreed upon. It is fundamental that Southern Bell must *66 confect its agreements concerning rates subject to the previously ordained power of the Commission to regulate those rates. Within that power to regulate, it must be conceded, reposes the power to reduce rates prospectively as was done in the case at bar. The determinations of the foregoing propositions relative to the powers of the Commission are preliminary to a decision of whether the questioned order did, in effect, reduce the rates with respect to the Southern Bell portion of certain intrastate toll rates and charges imposed for the joint use of exchange and toll facilities owned either by Southern Bell or independent connecting companies.
Southern Bell concedes that the reduction did affect the toll rates collected by them on “sent paid” or “received collect” messages but denies that the Order affected the toll rates collected by independent connecting companies for Southern Bell as “sent paid” or “received collect” messages where interchange facilities were involved. It seems quite evident from the plain language of the Order that the Commission did order and did contemplate that “all intrastate toll rates and charges” of Southern Bell were subject to the discount of 20 per cent, and that the Order was intended to effect a reduction in toll rates collected by independent connecting companies for the account of Southern Bell. The fact that Southern Bell was ordered to reduce its annual gross intrastate revenues in the amount of $3,940,000 and that it has, in fact, made reductions totalling a sum exceeding $3,940,000 does not alter this conclusion for the amount of $3,940,000 as contained in Order Number 6993, as amended, was applicable only to the test period and not to the effective period of Order Number 6993, as amended. It will appear from an examination of the Commission’s Order Number 6993 that the specific finding which was the genesis of the $3,940,000 reduction was as follows: “Southern Bell’s present intrastate telephone rates and charges are excessive, unjust and unreasonable, and should be reduced in the annualized amount of $3,940,-000 based on operations during the test period.” (Italics ours.) While the reduction in local pay telephone revenue, which is not in contest here, took into account the increase in volume resulting from a lower rate, the reduction in intrastate toll revenue did not.
We are of the opinion that the aforementioned result must follow under the facts in this case for, as pointed out heretofore, Southern Bell has, following the increase in its toll charges allowed by Commission Order Number 8117 of May 5, 1960, issued as a result of this Court’s mandate, increased its joint toll rates with the independent companies to the extent permitted by that Order both as to calls originating in a Southern Bell exchange as a “sent paid” message or terminating as a “received collect” message and as to calls originating in an exchange of an independent connecting company on a “sent paid” basis or terminating there on a “received collect” basis. If it can increase its charges with customers with whom it has no “customer relations” it can also reduce its charges with those customers. There is no circumstance which has been brought to our attention surrounding the issuance of Order Number 8117 whereby the charges for calls originated off the Bell system may be increased which distinguishes that Order from Order Number 6993, as amended, under which the Commission contends that charges should have been reduced, for all of the intrastate toll operating revenues of the company were contemplated in each order.
To hold otherwise would permit a discriminatory rate situation to prevail which is incompatible with sound practice and reason. This discrimination takes the form of the Company’s withholding a share of the refunds required by the Commission’s Order from some telephone users simply because they had paid tolls and charges for Southern Bell services through independent telephone companies rather than directly to Southern Bell.
*67 The Public Service Commission of Wisconsin has noted that “It has been the Commission’s policy, unless there are extenuating circumstances involved, to establish the same toll rate in both directions between any two toll points.” Prospect, Guthrie and Big Bend Telephone Company, 2-U-361S (1951). See, also Re Annaton-Preston Telephone Company, 2-U-4160, 4 PUR 3rd 56, 58 (1954). The New York Commission has also noted the desirability of having “uniform toll rates for like distances throughout the state.” Rochester Telephone Company, Case 13489 (1949). In a recent case the Tennessee Commission stated: “It has been the policy of this commission for a period of many years to maintain uniformity of intrastate toll rates within the state between all points and between all telephone companies.” Re Inter Mountain Telephone Company, Docket No. 3996, 19 PUR 3rd 109, 110 (1957). The Commission contends that it has adopted a similar policy in this state and we consider such a policy to be just and reasonable and within the authority of the Commission.
The Company furthermore contends that the result reached here will subject Southern Bell to unlimited and uncontrolled expense by efforts on the part of the independent companies to distribute refunds to their customers, or if they cannot do so, would permit such companies to obtain a windfall at the expense of Southern Bell. The obvious answer to this contention is that the refunds in question shall be made under proper supervision of the Commission, based upon adequate and proper records having been retained by or which are available to the independent companies, and the expense incurred will be within limits of sound and reasonable business practices, in keeping with those employed by Southern Bell itself in effecting the refunds made by it. The refunds contemplated here are to the customers and are not intended to provide a “windfall” for independent companies who are not in a position to make those refunds in a proper manner. The Commission will not permit such a result.
Nor can we subscribe to the contention made by Southern Bell that this result violates Article VI, Sec. 4 of the Constitution of Louisiana relative to fixing rates, and Article I, Sec. 2 of that Constitution by depriving Southern Bell of its property without due process of law. A review of those constitutional provisions reveals nothing in this result which is incompatible therewith, nor have counsel for Southern Bell supplied arguments which would suffice to support their contention.
For the reasons assigned, it is ordered that the permanent injunction issued herein by the District Court be and the same is declared to have been improvidently and improperly issued and same is hereby vacated, recalled, rescinded and set aside; and Order Number 8190 of the Louisiana Public Service Commission is hereby declared to be valid and enforceable, and this cause is hereby remanded to the Louisiana Public Service Commission for such further proceedings as are appropriate according to law and the views herein expressed.
FOURNET, C. J., and HAMLIN and SANDERS, JJ., dissent with written reasons.

. Southern Bell Telephone & Telegraph Co. v. Louisiana Public Service Commission, 1957, 232 La. 446, 94 So.2d 431, 437.

. Order No. 6999 amended Order No. 6993 to provide that the effective date of the reduction of intrastate toll rates and charges contained in said Order “shall he September 1, 1956, instead of August 1, 1956.” By subsequent orders of the Commission the 20 per cent reduction ordered effective September 1, 1956, was amended to 10 per cent effective June 17, 1959, through May 5, 1960, inclusive, the period during which Commission Order Number 6993 as amended by Commission Order Number 6999 remained in effect.

. The effective date for the reduction in the rates charged for public pay telephone calls was September 1, 1956, and August 1, 1956, was the effective date for the 20% discount on intrastate calls. By Order No. 0999, the commission extended these effective dates for one month in each case.