STATE ex rel. TRANSPORT DELIVERY COMPANY et al., Appellants,

v.

PUBLIC SERVICE COMMISSION OF MISSOURI, Respondent.

No. 24595.

Kansas City Court of Appeals.

Missouri.

April 3, 1967.

Kyle Williams, Jefferson City, for appellant, Curtis Transport, Inc.

Henry Andrae, Jefferson City, for appellant, Transport Delivery Co.

Cullen Coil, Jefferson City, for appellant, John Groner Motor Carrier, Inc.

Hendren & Andrae, Jefferson City, Carson, Inglish, Monaco & Coil, Jefferson City, of counsel, for appellants.

Wayne W. Waldo, Jefferson City, for respondents Public Service Commission of Missouri.

Frank J. Iuen, Herman W. Huber, Jefferson City for intervenors, John F. Oliver, Edwin G. Mueller, d/b/a Bernskoetter Moving and Storage.

HOWARD, Presiding Judge.

This is an appeal from a judgment of the Circuit Court of Cole County, affirming an order of the Public Service Commission of Missouri, permitting transfer of certain authority to operate as a common carrier by motor vehicle from Edwin G. Mueller, doing business as Bernskoetter Moving & Storage, to John F. Oliver. The application was filed in the Public Service Commission by Edwin G. Mueller, as transferor and John F. Oliver, as transferee, jointly, seeking a transfer without hearing. Transport Delivery Company, Kaw Transport Company, Curtis Transport, Inc., John Groner Motor Carrier, Inc. and John Rathouz, d/b/a John's Construction Company protested the transfer before the Public Service Commission. They filed petitions for leave to intervene and to have the application set for hearing, or, in the alternative, for oral argument on the question of the necessity and desirability of a hearing. This latter motion was heard on oral argument and the Commission ordered a hearing on the application for transfer to determine whether or not such transfer would be "consistent with the public interest."

This controversy concerns the applicability of the provisions of Section 390.111. (All references are to RSMo 1959 and V.A.M.S., unless otherwise specified.) Said section reads as follows:

"In the event a motor carrier, to which a certificate or permit shall have been issued under the provisions of sections 390.011 to 390.176, shall sell, transfer, or assign the business, rights or assets of such motor carrier, or any part thereof, and such motor carrier and the purchaser thereof shall make proper application to the commission in writing, containing such information as shall be prescribed by the commission by general order with respect to the transfer of certificates or permits, the commission shall transfer such original certificate or permit issued to such motor carrier, or the part so sold to such purchaser, if the commission shall determine that the purchaser is in all respects qualified under the provisions of sections 390.011 to 390.176 to conduct the business of a motor carrier within the meaning of sections 390.011 to 390.176, and upon the transfer of such certificate or permit it shall be effective in like manner as though originally issued to such purchaser; *provided, however, the*

*commission shall not be required to transfer from a certificate authorizing the transportation of general commodities or freight, any portion of such certificate authorizing the transportation of a part of such general commodities or freight over the same route or within the same territory, unless the commission shall further determine, after hearing upon due notice, that such transfer is consistent with the public interest.* (Emphasis supplied.)

By the application Mueller sought to transfer to Oliver "the business, goodwill and all of that intrastate portion of Certificate No. T–58, held by Transferor, *except household goods as defined by the Commission,* which reads as follows, * *.

"COMMON CARRIER, INTRASTATE IRREGULAR

"Intrastate Irregular: In the transportation of general commodities between Jefferson City and contiguous trade territory and from this territory to any point in Missouri and from any point in Missouri to Jefferson City and contiguous trade territory, subject to the restriction that no service is to be rendered between points on the regular route of an authorized motor carrier." (Emphasis supplied.)

Mueller also held specialized authority for household goods as follows:

"Intrastate Irregular: In the transportation of uncrated household goods as a specialized service over irregular routes to, from and between all points in the State of Missouri, irrespective of whether such points may be located on the regular route of another motor carrier."

He also held an interstate permit, which is not involved in any way in this proceeding.

The order for hearing on this transfer set out the history of Mueller's authority; pointed out that when a carrier acquired different pieces of authority, at different times, that any overlapping in such grants

merged with each other, so that the carrier only had one authority to perform one transportation service. It also pointed out that the general commodity authority held by Mueller was broad enough to cover the specialized service of transportation of uncrated household goods within the territorial scope of such general commodity authority. The Commission then held that "such a transfer would involve the transfer of a portion of a certificate authorizing the transportation of general commodities within the terms of Section 390.111."

At the hearing held pursuant to this order, John F. Oliver introduced evidence, including his own testimony, of his fitness to operate as a common carrier under the proposed transfer of authority. He testified that if the transfer were approved, he would haul anything and everything which he was authorized to haul by such authority, if he were called upon to do so. No evidence was offered by applicants touching upon the question of whether or not this transfer would be "consistent with the public interest," it being applicants' contention that on a showing of fitness they were entitled, as a matter of law, to have such transfer approved. Mr. Mueller did not appear or testify.

Mr. Groner and Mr. Minshall appeared as witnesses for protestants John Groner Motor Carrier, Inc. and Transport Delivery Company, respectively. They testified that their companies hauled petroleum products (principally gasoline) from the Phillips Pipeline Terminal in Jefferson City and from various other terminals in central Missouri. They testified that, although they were familiar with the carriers who hauled from the various pipeline terminals, they had never seen nor known of Mr. Mueller hauling petroleum products from any such terminal. They testified that when Mr. Oliver acquired authority permitting him to haul petroleum products from the terminal near Mexico, Missouri, that he took business away from both Groner and Transport Delivery. They further testified that although their gross in-

come had increased in the years 1961, 1962 and 1963, that business had fallen off in 1964, and that while they had purchased additional equipment in the past few years, they had equipment standing idle at the time of the hearing. Their interest was solely in the transportation of petroleum products.

Mr. Rathouz was the only other witness at the hearing. He held specialized heavy hauling authority to and from an area surrounding Jefferson City on the one hand and all points in the State of Missouri on the other hand. He testified that he owned one tractor and two trailers and that he did not have enough heavy hauling business to keep these vehicles operating all the time, and that another carrier authorized to render such service would be detrimental to him.

On May 24, 1965, the Commission entered its report and order denying the transfer. Two commissioners dissented. Appellants filed motion for reconsideration and rehearing and this motion was orally argued before the Commission en banc on August 20, 1965, and the motion for rehearing was taken with the case.

On September 24, 1965, the report and order of May 24, 1965, was set aside and a new report and order entered approving the proposed transfer and transferring the authority from Mueller to Oliver. Two commissioners dissented from this order. It appears that between the two orders the chairman of the Commission retired and a new chairman was appointed. The two commissioners who had dissented from the order of May 24, 1965, were joined by the new chairman, resulting in the change of decision.

Protestants Transport Delivery Company, Curtis Transport, Inc. and John Groner Motor Carrier, Inc., duly appealed to the Circuit Court of Cole County, where the order of the Commission was affirmed. These protestants have duly appealed to this court.

■■■ When this case was argued before this court, the attorneys for applicants orally and for the first time raised the contention that this appeal should be dismissed because the appellants had not filed a cost bond within ten days of the rendition of the judgment in the Circuit Court, as required by Section 386.540, paragraph 2. Pursuant to leave granted, at the time of argument, written motion to dismiss on this ground was filed. The appellants responded to such motion showing that the failure to file the bond was a matter of pure oversight and inadvertence and that such failure had been cured and a proper bond filed. By affidavit it is shown that the Public Service Commission has no objection to this late filing. Under the circumstances here presented, it appears that the provisions of this statute are directory and not mandatory and, since the late filing of the bond has caused no harm or hardship on anyone, and since the Public Service Commission, for whose protection the bond is required, has no objection, we decline to dismiss the appeal, but conclude to consider this matter on the merits.

On this appeal appellants contend that the order of the Commission, as affirmed by the Circuit Court, is unlawful and unreasonable because it was not supported by competent and substantial evidence on the whole record and there was no evidence to support the conclusion of the Commission that the transfer "would be consistent with the public interest" as required by the proviso in Section 390.111.

■■■ This proviso was added to the statute after the decision of this court in State ex rel. Springfield Warehouse and Transfer Company v. Public Service Commission, 240 Mo.App. 1147, 225 S.W.2d 792, wherein it was held that the Commission was required as a matter of law to approve a transfer upon finding that the transferee was qualified to perform the services under such transferred authority. See also State ex rel. Gehrs v. Public Service Commission, 232 Mo.App. 1018, 114 S.W.2d 161.

This proviso takes away the right to transfer a portion of a certificate authorizing the transportation of general commodities, as a matter of law. It does not require the Commission to hold a hearing on the transfer but on the other hand it does not require the Commission to permit the transfer on a showing only that the transferee is qualified. It authorizes the Commission, in its discretion, to hold a hearing on the question of whether or not the proposed transfer "is consistent with the public interest" and the statute requires the Commission to permit the transfer only where it finds that the transfer will be "consistent with the public interest." The Commission, by its order of January 6, 1965, exercised its discretion and determined that there should be a hearing on the question of whether or not the proposed transfer was "consistent with the public interest." This order remains undisturbed and under it the Commission may only permit the transfer if it makes such finding and before it can make such finding, there must be evidence before it to support that finding. See State ex rel. City of West Plains v. Public Service Commission, Mo. Sup., 310 S.W.2d 925; Videon Corp. v. Burton, Mo.App., 369 S.W.2d 264.

■■ On appeal from the order of the Public Service Commission, the appellant has the burden of showing that the decision of the Commission is unreasonable, unlawful, arbitrary and capricious. See State ex rel. City of St. Louis v. Public Service Commission, 335 Mo. 448, 73 S.W.2d 393; State ex rel. Byers Transfer Company v. Missouri Public Service Commission, Mo. App., 246 S.W.2d 825, and State ex rel. Potashnick Truck Service Inc. v. Public Service Commission, Mo.App., 129 S.W.2d 69. In the case at bar, the appellants have sustained this burden by filing the transcript of the evidence heard by the Commission. As has been heretofore pointed out, the applicants specifically and consciously refrained from introducing any evidence on this point. The three witnesses, who appeared and testified in addition to the proposed transferee, represented carriers interested only in the special service of transporting petroleum products, and in the special service of heavy hauling. As is pointed out by the applicants in their brief "much more is involved in this case than just the transfer of authority to haul petroleum." Likewise, much more is involved than just the transfer of authority to perform heavy hauling services. General commodity authority embraces anything and everything that can be transported by truck and under such authority a carrier, if he files the appropriate rates and has the necessary equipment, can haul anything he can find to haul, including all types of specialized hauling, which may, at the same time, be the subject of individual specialized authority granted to other carriers. See re Bernskoetter Moving & Storage Co., 6 Mo. PSC (N.S.) 117 and State ex rel. Transport Delivery Co. v. Public Service Commission, Mo.App., 382 S.W.2d 823. Thus, since the only testimony which would possibly bear on the question of whether or not the proposed transfer was "consistent with the public interest" concerned only specialized hauling in the fields of petroleum products and heavy hauling, it is apparent that there was no evidence concerning the matter of whether or not this transfer "was consistent with the public interest" as to the many and varied other types of transportation authorized by the authority proposed to be transferred.

■ In the order approving this transfer entered by the Commission under date of September 24, 1965, the Commission relied heavily upon the fact that there was no evidence that the transfer would be detrimental to the public interest. This statement, while true, does not result from a consideration of substantial evidence on the matter, but rather results from the entire lack of evidence. There is no burden on the Commission to adduce evidence on this question, and there is no burden on other carriers in the area covered by the authority to be transferred, to come in and show that the transfer will be

against public interest. On the contrary, the burden is on the applicant to show affirmatively that the transfer will be in the public interest. The absence of evidence and the absence of protest by other carriers in the field can not be converted into affirmative evidence on this question. See State ex rel. Byers Transportation Co. v. Public Service Commission, Mo.App., 246 S.W.2d 825, and State ex rel. Potashnick Truck Service, Inc. v. Public Service Commission, Mo.App., 129 S.W.2d 69. We recognize that both of these cases involve a question of public convenience and necessity justifying the granting of a certificate and we further recognize that the quantum of proof required on the question of whether or not a transfer is "consistent with the public interest" is much less than the quantum of proof required on an application for the original issuance of a certificate of public convenience and necessity. However, we believe that the principles set forth in these cases are applicable here and they do not permit the conversion of an absolute lack of any evidence into affirmative evidence of the point to be proved.

 In other words, in the hearing before the Commission the burden was on the applicants to show that the proposed transfer would be "consistent with the public interest" and this they have entirely failed and refused to do. Therefore, we can only conclude that the order of the Commission entered September 24, 1965, approving this transfer is unreasonable and void because it is not supported by any evidence, let alone competent and substantial evidence. The order of the Commission purports to find evidence on the whole record that the proposed transfer is "consistent with the public interest" from the testimony of the three witnesses for the protestants on cross-examination which is summarized as follows: "Under the evidence herein, we do not believe that the ability of the competing carriers to render adequate, efficient service to the public would be detrimentally affected, or that the proposed transfer would result in detriment to the interests of the protestants. To the contrary, the protestants have admitted that even after the transferee engaged in competition with them elsewhere, as a result of another case, they have purchased additional equipment, and have enjoyed increased total revenues, and that there is 4% to 5% annual rate of increase in the volume of gasoline produced nationally." It will be noted that this summary refers only to the transportation of petroleum products. We agree that evidence coming into the case on cross-examination of protestants' witnesses could be sufficient to carry applicants' burden, but in this case the evidence before us is entirely insufficient.

This evidence, together with the evidence concerning heavy hauling, covers only one very small segment of the broad authority proposed to be transferred. On the question of whether or not the transfer of the remainder of this general commodity authority would be "consistent with the public interest", there is a complete absence of evidence, and, therefore, no basis on the record for the Commission to find either that the proposed transfer is or is not "consistent with the public interest."

 What we have said disposes of the point raised by appellants and requires the reversal of the judgment below. However, the applicants in their brief strenuously contend, as they have contended throughout this proceeding, that they are entitled to this transfer as a matter of law, under the provisions of this statute, because it does not constitute a splitting of the general commodity authority. Since this proceeding must go back to the Commission, we believe that we should comment thereon.

In its order approving the transfer the Commission specifically declined to pass upon this issue because it found that such issue was moot after it held that in any event the transfer was consistent with the public

interest, whether or not the transfer would result in a splitting of the authority.

In opposition to applicants' contention the appellant protestants argue that the doctrine of merger, as previously applied by this Commission, applies in this case; that the transferor Mueller has only one certificate of authority, which includes all of the transportation that he is authorized to perform; that this authority includes the right to transport general commodities, and that the transfer of the authority to haul general commodities, leaving in Mueller only the authority to haul household goods, constitutes a splitting of this authority, and comes specifically within the wording of the proviso of Section 390.111. On the other hand, applicants contend that Mueller wants to separate two distinct pieces of authority. One is the irregular route authority to haul general commodities and the other is the authority to haul household goods. Applicants contend that these two authorities were acquired at different times by different and separate actions of the Commission and that they remain different and separate entities. Applicants specifically deny the authority of the Commission to apply its doctrine of merger because the same is not specifically authorized by statute. In this case we are not required to pass upon the legality of this doctrine of merger. If the doctrine is applied, and we hold that all certificates of authority issued to Mueller and his predecessors are merged into one authority, then clearly, this authority authorizes the transportation of general commodities and this application is for the transfer of part of that authority and comes strictly and literally within the provisions of the proviso of Section 390.111.

If, on the other hand, we adopt the argument of applicants then we are dealing with the transfer of the general commodity authority and do not need to consider the second paragraph of the authority wherein the special household goods authority is described. However, we must remember, as is pointed out in re Bernskoetter Moving & Storage Co., 6 Mo. PSC (N.S.) 117 and State ex rel. Transport Delivery Company v. Public Service Commission, Mo. App., 382 S.W.2d 823, that this general commodity authority includes authority to perform the special service of hauling household goods. This portion of this general commodity authority is to be retained by Mueller. The application specifically provides for such retention and specifically provides against the transfer of authority to haul household goods to Oliver. The Commission's order of September 24, 1965, shows that there was such a splitting. Paragraph "Ordered 2:" transfers to Oliver authority: "in the transportation of general commodities, *except uncrated household goods*, between Jefferson City. * * *" (Emphasis supplied.)

The Commission by this order has not transferred all of the general commodity authority held by Mueller. It has split off that portion of the general commodity authority authorizing the transportation of household goods, and this order specifically authorizes its retention by Mueller and it is not transferred to Oliver.

Thus, regardless of which argument is accepted, this application for transfer does specifically and literally come within the proviso of Section 390.111 and the Commission is required to proceed thereunder.

For the reasons heretofore noted, the judgment of the trial court affirming the order of the Public Service Commission is hereby reversed and the cause is remanded to the Circuit Court of Cole County, with directions to remand this action to the Public Service Commission for further proceedings.

All concur.