Massachusetts Furniture and Piano Movers Association, Inc. & others *vs.* Department of Public Utilities.

Suffolk. March 10, 1966. — April 7, 1966.

Present: Wilkins, C.J., Spalding, Cutter, Spiegel, & Reardon, JJ.

*Public Utilities. Carrier,* Transfer of certificate, Carrier by motor vehicle, Carrier of goods.

A conclusion that the trustee in bankruptcy of a common carrier of property by motor vehicle holding an irregular route certificate did not have a "business" which could be the subject of a bona fide sale in connection with a transfer of the certificate under G. L. c. 159B, § 11, was re-

quired where it appeared that the trustee had only a small amount of equipment, that there was "a complete abandonment of the business" for about ten months after the adjudication in bankruptcy, although a truck driver and a part time bookkeeper were hired during that period, and that thereafter until the time of the application for the transfer of the certificate the carrier handled shipments of relatively few commodities in "insignificant quantities" within a "very restricted area."

PETITION filed in the Supreme Judicial Court for the county of Suffolk on October 2, 1964, for review of an order of the respondent.

The suit was reserved and reported by *Spalding*, J., without decision.

*David M. Marshall* (*Arthur M. Marshall* with him) for the petitioners.

*Peter Roth*, Assistant Attorney General, for the respondent.

*Max C. Abrams* for the interveners Eugene B. Berman, trustee in bankruptcy, & another.

SPALDING, J. This is an appeal brought under G. L. c. 25, § 5, by five corporate carriers of property by motor vehicle in Massachusetts. See *A. B. & C. Motor Transp. Co. Inc. v. Department of Pub. Util.* 327 Mass. 550. They seek a review of the order of the Department of Public Utilities (department) approving the transfer of an irregular route common carrier certificate from the trustee in bankruptcy of Turnpike Express, Inc. (Turnpike) to United Van Lines, Inc. (United). The department's order reversed a decision of the director of the department's commercial motor vehicle division (hearing officer) denying, after a hearing, the application for transfer. The single justice reserved and reported the case without decision.

No conflict exists between the findings of facts made by the hearing officer and those made by the department.[1] On April 6, 1962, Turnpike was adjudged bankrupt and Eugene B. Berman was appointed receiver; on May 10, 1962, he qualified as trustee. The department, on July 25, 1962, approved the transfer of the business to the trustee.

---

[1] The department considered the case on the evidence introduced before the hearing officer. The case was submitted to the single justice on the same evidence.

350 Mass. 563 565

Massachusetts Furniture & Piano Movers Assn. *v.* Dept. of Public Util.

Effective tariffs were filed and published by the trustee on August 1, 1962. From that time until February 1, 1963, the events which occurred included: the signing of the present application by Turnpike and United (November); the registration with the department of a semi-van truck (January); and, at some undetermined date prior to February 1, 1963, the hiring of a truck driver and of a part time bookkeeper for the operation of the business. There was no evidence that Turnpike engaged in any normal business activities from April 6, 1962, to February 1, 1963. Between February 1 and March 27, 1963, Turnpike made forty-five shipments for three shippers, receiving gross revenue of $490.88 for these services. These shipments consisted of relatively few commodities in "insignificant quantities" which were transported within a "very restricted area." The application seeking transfer of the certificate was filed April 1, 1963.

The hearing officer concluded "that the trustee has failed to establish to the satisfaction of the department that there was a business in connection with the transfer . . . of the certificate . . . within the meaning of section 11, of Chapter 159B, G. L.," and denied the application. This conclusion appears to have been based to some extent upon the subsidiary finding that "[t]here was a complete abandonment of the business between April 6, 1962 and February 1, 1963 . . . ." In reversing the decision of the hearing officer, the department found that the "interruption of the business" was occasioned by the "usual delays encountered by a trustee," and concluded that to "hold that a Receiver may not transfer a certificate because of a temporary interruption of the business would be unnecessarily harsh and would be at variance with state and federal insolvency laws." The department also concluded: "Evidence that the [r]eceiver activated the business at the first opportunity is sufficient to warrant a finding that this was a going business."

General Laws c. 159B, § 11, grants the department the power to approve the transfer of a certificate, permit or

license, with the limitation that "no certificate and no permit shall be transferred except in connection with the bona fide sale to the transferee of the business of the transferor." Thus the question to be decided is whether Turnpike had, at the time of this application, a business as a carrier which could be the subject of a bona fide sale.

The statute itself provides no guidelines for determining at what point a business has become so insubstantial that it will not support the transfer of a common carrier certificate. But the principal decision involving the application of this rather vague standard sheds some light on the subject. *A. B. & C. Motor Transp. Co. Inc.* v. *Department of Pub. Util.* 329 Mass. 719, 722. From that opinion and the original papers these facts appear. The transferring carrier held three certificates authorizing the carriage of property for hire, one for a regular route between Boston and Greenfield, another for a regular route between Boston and Worcester, and a third for unrestricted irregular route operations throughout the Commonwealth. The carrier sought the approval of the department to transfer these certificates to three separate carriers. Prior to June, 1949, it conducted extensive operations using thirty-five trucks. Between June and November, 1949, the carrier sold all of its equipment except one old truck. There was some evidence that the carrier continued in business up to the date of the hearing, March 3, 1950, though "if it did any business under these certificates between November, 1949, and March, 1950 [or afterwards], it was only fragmentary and occasional in nature." Upon the foregoing facts, the department ruled that there was some "business" which bona fide could be sold, and that it did not matter whether the business was substantial or not. The single justice ruled that such business as could be conducted with an old one ton truck could not support an approval of a transfer of three certificates for three long and extensive routes that obviously would require much more equipment. He further ruled that "any implied finding [by the department] that there was a business sold in good faith to each of the

three separate and distinct buyers by the transferor was not warranted by the evidence.'' A decree was entered annulling the order of the department. This court, on appeal, affirmed the decree and approved the rulings on which it was based.

The certificate which Turnpike is seeking to transfer authorizes the irregular route carriage of general commodities anywhere in the Commonwealth. But even without reference to the scope of the certificate, the only conclusion which the evidence warrants is that Turnpike had, in April, 1963, no ''business'' to sell within the meaning of c. 159B, § 11. In the light of our decision in the *A. B. & C. Motor Transp.* case, *supra,* we cannot accept the department's view that the token activity conducted during the two months prior to the filing of the application, and the equipment available for carrying out that activity, evidence the existence of a business which, apart from its certificate, could be the subject of a bona fide sale. Moreover, while not conclusive, the complete cessation of business activity from April, 1962, to February 1, 1963, in spite of the evidence that during this period the corporation ''conducted whatever business came to it in the course of its operation,'' supports our opinion that apart from the certificate and a small amount of equipment Turnpike had nothing to sell.

A decree is to be entered setting aside the order of the department.

*So ordered.*