**GATEWAY TRANSPORTATION CO., INC., et al., Plaintiffs,**

v.

**UNITED STATES of America and the Interstate Commerce Commission, Defendants.**

No. 71–C–328.

United States District Court,
W. D. Wisconsin.

Oct. 31, 1973.

John L. Bruemmer, of Bieberstein, Cooper, Bruemmer, Gartzke & Hanson, Madison, Wis., for plaintiffs.

John O. Olson, U. S. Atty., Madison, Wis., John H. D. Wigger, U. S. Dept. of Justice, Washington, D. C., for defendant, United States.

Hanford O'Hara, Interstate Commerce Commission, Washington, D. C., for defendant, Interstate Commerce Comm.

## OPINION AND ORDER

Before FAIRCHILD, Circuit Judge, TEHAN, Senior District Judge and DOYLE, District Judge:

### PER CURIAM.

This is an action to set aside an order of the Interstate Commerce Commission approving the purchase by Schneider Transport & Storage, Inc. of certain operating rights of Lavery Transportation, Inc. The Commission decision and order are reported at 109 M.C.C. 479. We shall avoid unnecessary repetition of the facts there set forth.

Lavery's operating authorities, disregarding two minor ones, which require no specific mention, consisted of the following: (a)(1), between Chicago and Milwaukee over a route we shall call the lakeshore route, serving intermediate and specified off route points; (a)(3) between Chicago and Milwaukee over a different route we shall call the inland route, serving no intermediate points; (a)(4) between a point on the lakeshore route and Green Bay over a route which shortly joined the inland route of (a)(3) and followed it as far as Milwaukee, serving specified intermediate and off route points north of Milwaukee.

In December, 1967 Lavery made agreements for two sales. One, to PIE, was a sale of the (a)(1) authority over the lakeshore route. The other, to Schneider, and involved in this action, was a sale of an authority between Chicago and Green Bay, amounting to a combination of (a)(3) over the inland route and (a)(4). Authority was to be sought to permit joinder between the southerly end of (a)(4) and a nearby intermediate point on the (a)(3) inland route. Schneider contemplated a restriction against service at Milwaukee under (a)(3).

The hearing examiner approved the PIE purchase. That part of his order became final and the transaction consummated. He denied approval of the Schneider purchase, but exceptions were taken and the Commission approved the transaction, with modifications which need not be detailed here.

### (1) *Dormancy and need.*

The Commission was unable to find Lavery's rights between Chicago and points north of Milwaukee dormant and found that Lavery's service was consistent with its abilities and resources. It also decided, though considered unnecessary to the determination of the proceeding, "that continuation of this service is needed and will be supported by the public following consummation." The ultimate finding was that the Schneider purchase will be consistent with the public interest.

Plaintiffs challenge the failure to find dormancy and the finding of need for the service.

█ It is clear that the scope of judicial review is limited. " 'The wisdom and experience of that commission,' not of the courts, must determine whether the proposed consolidation is 'consistent with the public interest.' . . . If the Commission did not exceed the statutory limits within which Congress confined its discretion and its findings are adequate and supported by evidence, it is not our function to upset its order." McLean Trucking Co. v. United States, 321 U.S. 67, 87, 64 S.Ct. 370, 381, 88 L. Ed. 544 (1944). See Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 618, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966).

█ Dormancy has been defined as "an abandonment or termination of services the reactivation of which will result in damages either to the public interest or to intervening or protesting carriers who conducted operations during the interruption of said services. This is a common sense rule compatible with the concern for the public interest

that must be resolved." Arrow Transportation Co. v. United States, 300 F. Supp. 813, 818 (D.C.1969). The same decision pointed out, p. 817, that the policy reason for not allowing transfer of a dormant authority is that allowance "would institute new service without a showing of public need therefor in violation of the statutory standard and policy." Consistent with this policy, and, we think, reasonably, the Commission has taken the position that the transfer of rights which are dormant, or nearly so, may be in the public interest where need for service is also shown. See Ross, 87 M.C.C. 373, 376 (1961); Bell Lines v. United States, 291 F.Supp. 964, 967 (S.D.W.Va., 1968).

■ The decision of the Commission refers to factors considered in reaching its findings on the issues of dormancy and need. The briefs of the parties bring forth much of the evidentiary detail, to which we have addressed ourselves. Bearing in mind the policy reason why dormancy is germane, the relationship in that context between the issues of dormancy and need for service, and the administrative discretion and expertise to be utilized in determining, ultimately, whether a transfer is consistent with the public interest, we are unable to say that the findings in this case were not adequately supported by substantial evidence. We are satisfied that the real area of dispute was for resolution by the Commission and not a reviewing court.

### (2) Splitting of a single authority.

■ Plaintiffs also argue that approval of the Schneider purchase is unlawful because it has the effect of dividing what plaintiffs contend was a single authority between Chicago and Milwaukee into two authorities: (a)(1), purchased by PIE, and (a)(3), an essential part of the authority purchased by Schneider. Plaintiffs assert that even though (a)(1) and (a)(3) were separately stated, and even though (a)(1) is over the lakeshore route, serving intermediate and specified off route points, while (a)(3) is over the inland route, serving no intermediate points, they constitute, under Commission doctrine, but a single authority between Chicago and Milwaukee unless it can be shown that separate operations have been conducted over each route and that traffic handled was appurtenant to each. Plaintiffs contend no such showing can be found here.

It appears, however, that the division of authority was found unobjectionable by the examiner and went into effect when his order approving the PIE purchase became final. The (a)(1) authority went to PIE and the (a)(3) would remain with Lavery under the examiner's order. Plaintiffs took no exceptions to this or any other part of the examiner's order, and the propriety of having the (a)(1) and (a)(3) authorities in different hands was not before the Commission. There was no claim of dormancy of (a)(1) and (a)(3). We conclude that plaintiffs waived this particular ground of objection.

### (3) Laches.

Though we rest our decision on the points above stated, we note that a claim of laches is at least arguable. The approval of the Schneider purchase became administratively final February 27, 1971 and the transaction was consummated March 1, 1971. The plaintiffs waited six months after the order became final before bringing this action. There was a substantial change in the position of the parties, arguably in reliance on the finality of the order.

Accordingly,

It is ordered,

That judgment be entered affirming the order of the Interstate Commerce Commission.