**SUBLER TRANSFER, INC.,**
Plaintiff,
**Midwest Emery Freight System, Inc.,**
Intervening Plaintiff,
v.
**The UNITED STATES of America,**
and
**The Interstate Commerce Commission,**
Defendants,
and
**Frostways, Inc., Intervening**
Defendant.
Civ. No. 4455.

United States District Court,
S. D. Ohio, W. D.
Jan. 21, 1975.

**764**

Paul B. Roderer, Dayton, Ohio, E. Stephen Heisley, Washington D. C., for plaintiffs.

Robert D. Schuler, Bloomfield, Mich., Howard N. Thiele, Jr., Armisted W. Gilliam, Jr., Dayton, Ohio, for defendants.

OPINION

Before PECK, Circuit Judge, WEINMAN, Senior District Judge, and RUBIN, District Judge.

CARL B. RUBIN, District Judge.

This matter is before the Court following the joint submission of briefs and memoranda by the parties. Plaintiffs seek to have the Court set aside certain orders of the Interstate Commerce Commission (hereinafter I.C.C. or Commission). This matter has been considered by a three-judge federal court properly convened and with jurisdiction to review the actions of the I.C. C. in this case. 28 U.S.C.A. §§ 1336, 1398, 2284, and 2321–2325. The scope of this Court's review in this case must be very broad, as is made clear in the relevant provision of the Administrative Procedure Act, 5 U.S.C.A. § 706.

■ For affirmation an administrative agency's actions must be within its statutory powers and it must be rational and supported by substantial evidence. Once these criteria have been satisfied a reviewing court can only sustain the agency even though it might disagree with the agency's conclusions. Illinois C. R. Co. v. Norfolk & W. R. Co., 385 U. S. 57, 69, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966); Consolo v. Federal Maritime Commission, 383 U.S. 607, 619–621, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); Universal Camera Corp. v. Labor Board, 340

U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); United States v. Pierce Auto Freight Lines, 327 U.S. 515, 535–536, 66 S.Ct. 687, 90 L.Ed. 821 (1945); Virginian R. Co. v. United States, 272 U.S. 658, 663, 47 S.Ct. 222, 71 L.Ed. 463 (1926).

I

WAS THE COMMISSION'S USE OF THE "MODIFIED PROCEDURE" [1] WITHIN THE SCOPE OF ITS AUTHORIZATION?

5 U.S.C. § 706(2)(C)

■ The I.C.C., in conducting a full and fair hearing, need only consider the submission of written evidence, as distinct from oral testimony elicited on cross-examination.[2] This is recognized in Section 7(c) of the Administrative Procedure Act (5 U.S.C. § 556(d)) which provides:

Except as otherwise provided by statute, the proponent of a rule or order has the burden of proof. Any oral or documentary evidence may be received, but the agency as a matter of policy shall provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence. A sanction may not be imposed or rule or order issued except on consideration of the whole record or those parts thereof cited by a party and supported by and in accordance with the reliable, probative, and substantial evidence. A party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts. In rule making or determining claims for money

1. 49 C.F.R. § 1100.5(j): "The term 'modified procedure' means the procedure specified in Rules 45 to 54, inclusive, which rules provide for the filing and serving of pleadings in proceedings with a view to limiting the matters upon which subsequent oral evidence, if any, will be introduced."
Rules 45 to 54 referred to above correspond to 49 C.F.R. § 1100.45 through 1100.54, inclusive.

2. See 49 C.F.R. § 1100.53(a) Request For Cross Examination Or Other Hearing, which states, in part: " . . . Unless material facts are in dispute, oral hearing will not be held for the sole purpose of cross examination."

or benefits or applications for initial licenses, *an agency may*, when a party will not be prejudiced thereby, *adopt procedures for the submission of all or part of the evidence in written form.* [emphasis added]

The statutory scheme thus clearly contemplates decisions based solely on written presentations, with specific safeguards for the rights of the parties. *See* Reliance Steel Products Co. v. United States, 150 F.Supp. 118 (W.D.Pa. 1957). The use of the modified procedure conforms to the statute.

■ The validity of the Commission's modified procedure is well established. The Supreme Court has recently affirmed a three-judge court's approval of the modified procedure. Boat Transit, Inc. v. United States, 1970 Federal Carrier Cases, ¶ 82,215 (E.D.Mich.1970) (not otherwise reported), aff'd. 401 U.S. 928, 91 S.Ct. 934, 28 L.Ed.2d 210 (1970). In that case the district court succinctly summarized the need for, and the validity of, the Commission's modified procedure:

> With something like 7,500 motor carrier applications in the year 1968, and no doubt at least an equal number of 1969, the Commission would properly be open to criticism if it failed to devise and develop procedures which would better enable it to deal with the flood. We cannot say that in this case the use of the modified procedure, in accordance with 49 C.F.R. §§ 1100.53 and 1100.247 did not provide the parties to the proceedings a 'full hearing,' i. e., an opportunity, by evidence and argument, to make a showing fairly adequate to establish the propriety or impropriety, from the standpoint of justice, of the action to be taken, and to show the claims of the opposing party and to meet them.

*See also,* Allied Van Lines v. United States, 303 F.Supp. 742, 749 (C.D.Cal. 1969).

■ Whether a proceeding is to be handled by oral hearing rather than by a modified procedure is a matter for the Commission's discretion. This and other basic facts about the right to oral hearing were pointed out by the Court in Frozen Foods Express, Inc. v. United States, 346 F.Supp. 254, 260 (W.D.Tex. 1972):

> When considering this issue, the Courts, as well as the Commission itself, have held that there is no absolute right to an oral hearing, but that it is discretionary with the Commission. Howard Hall Co. v. United States, 332 F.Supp. 1076, 1080 (N.D. Ala.1971); Allied Van Lines Co. v. United States, 303 F.Supp. 742, 747 (C. D.Cal.1969); Kingpak, Inc., Investigation of Operations, 103 M.C.C. 319, 344 (1966). The Commission's Modified Procedure provides that "unless material facts are in dispute, oral hearing will not be held for the sole purpose of cross-examination." 49 C. F.R. § 1100.53 (1971).

> To grant plaintiffs' application for an order setting aside the Commission's orders, this Court would have to find either that the Commission's modified procedure denies fundamental fairness, or that the present application of that procedure was violative of due process.

Allied Van Lines Co. v. United States, *supra,* 303 F.Supp. at 749–50.

> The weight of authority holds that neither the Administrative Procedure Act, the Interstate Commerce Act, nor due process requires an oral hearing in this type of case and that the Commission's modified procedure is fundamentally fair. [citations omitted]

■ In the present case there are several factors militating in favor of the Commission's decision to use the modified procedure.[3] There is, of course, the omnipresent need to expedite the proc-

---

3. The Commission's decision to use the modified procedure and to hold the parties to Rule 247(e)(3) of the Commission's Rules of Practice can be found in the Commission's Order, Docket No. MC–124170 (Sub-No. 26) dated March 15, 1972.

essing of the tremendous volume of matters presented to the Commission for consideration. Secondly, the Commission found that there was already sufficient evidence in the record on which to base a determination, and oral cross-examination was therefore not needed. Thirdly, since the plaintiffs had failed to avail themselves of the wide range of discovery procedures available to a party involved in I.C.C. proceedings,[4] they should not be heard to complain about the denial of the use of cross-examination.[5] And, lastly, Subler had failed to show why it could not clarify the issues and rebut the supporting shippers' evidence through the use of verified statements.

In light of the above, the Commission was well within the scope of its authorization and its discretion in denying plaintiffs' request for oral hearing and cross-examination, and in handling the application of Frostways, Inc. by use of the modified procedure.

## II

### WERE THE COMMISSION'S CONCLUSIONS "UNSUPPORTED BY SUBSTANTIAL EVIDENCE"?

#### 5 U.S.C. § 706(2)(E)

■■ While courts are not intended automatically to validate Commission decisions, a review of such a decision is not a trial *de novo*, but rather is based upon the record made before the Commission. The Commission's order must be sustained if it is supported by substantial evidence when viewed on the record as a whole. The definitive description of substantial evidence was stated by the Supreme Court in Consolo v. Federal Maritime Commission, *supra*, 383 U.S. at 619–620, 86 S.Ct. at 1026:

We have defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. Labor Board, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126. "[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." Labor Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660. This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. [citations omitted]

Members of this court have previously stated the role of Commission order review in the case of Carl Subler Trucking, Inc. v. United States, 313 F.Supp. 971, 979–80 (S.D.Ohio 1970):[6]

The scope of this Court's review is limited to a determination of whether the Commission's orders are within

---

4. The Commission's rules provide for a wide range of discovery procedures, including subpoenas of records (49 C.F.R. § 1100.56), depositions (49 C.F.R. § 1100.57), and interrogatories (49 C.F.R. § 1100.59).

5. "It should be noted that plaintiffs made no attempt to utilize the Commission's discovery procedures (49 C.F.R. § 1100.56–57) by seeking to take depositions of, or present interrogatories to, Pyramid's supporting witnesses—procedures which could conceivably and easily give the plaintiffs the opportunity for the confrontation and cross-examination they wanted, and at the same time alleviate the alleged necessity for an oral hearing."

Allied Van Lines v. United States, *supra*, 303 F.Supp. at 749, where the Court affirmed the Commission's denial of cross-examination in a motor carrier application proceeding handled under modified procedure. *See also*, Ashworth Transfer, Inc. v. United States, 315 F.Supp. 199, 203 (D.Utah, 1970), where the Court sustained the Commission's denial of a request for cross-examination.

6. John W. Peck, Circuit Judge, presiding; Carl A. Weinman, District Judge; and David S. Porter, District Judge.

the scope of its authority and are based upon adequate findings which are supported by substantial evidence on the record as a whole. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). When there is a rational basis for the decision of the agency, the decision must be upheld even though the court might reach a different result upon the same evidence. [citations omitted]

The statutory requirements that the Commission must satisfy to the level of "substantial evidence" are contained, for the purpose of the issuance of certificates of public convenience and necessity, in § 207(a) of the Interstate Commerce Act:[7]

> Subject to section 210, a certificate shall be issued to any qualified applicant therefor authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this part and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied * * *

■ This statute provides, in essence, three matters of fact of which the Commission must have found "substantial evidence" before it could grant Frostways, Inc., application: (1) the applicant must be fit, willing, and able properly to perform, etc.; (2) the applicant must be fit, willing, and able to conform to the rules of the Commission; and (3) the service must be required by present or future public convenience or necessity. That the Commission has found such facts to be true cannot be questioned.[8] It is the evidentiary basis upon which such facts were found that is in dispute.

Pursuant to the Commission's modified procedure, evidence was submitted to the Commission in the form of verified statements. Frostways, Inc. submitted such verified statements from: Joseph J. Mercurio, a partner in Mercurio Brothers, a wholesale banana distributor in Detroit, Michigan; Louis F. Badalament, Vice-President of Badalament, Inc., a banana distributor; Charles W. Palmer, sales manager for the eastern marketing division of Castle & Cooke Foods, banana importers from Central and South America; and Peter Comtabad, the traffic manager for Chiquita Brands, Inc., importer and distributor of bananas into the United States from Central and South America. These persons had direct knowledge of (1) Frostways, Inc.,'s ability to perform, and (2) the requirements for the present and future public convenience and necessity in the industry in question. It is for the Commission to weigh and consider their testimony. Such testimony established that Frostways, Inc. had been not only fit, willing, and able to properly perform, but that its service had been the best available. Their testimony likewise established that in regard to the domestic distribution of bananas and "roller loads,"[9] the presently auth-

---

7. 49 U.S.C. § 307(a).

8. See I.C.C. Order, Docket No. MC–124170 (Sub-No. 26) dated November 3, 1972.

9. A "roller load" is an unsold shipment (or truck load) of bananas that is moved to a general market area, or shipped in a general direction, which is then sold en route and diverted to a specific destination when the sale is consummated. This requires that the driver receive instructions as to a final delivery point after partially completing his journey, which requires that a carrier be flexible and have wide area authority.

orized trucking lines were insufficient to handle the Baltimore market without Frostway, Inc.'s help and that the situation in Baltimore would become even more demanding on banana distributors in the near future. As to the requirement of conformance to the I.C.C. rules and regulations, the Commission need only look to the past record of Frostways, Inc. regarding its performance under other permits and certificates. This evidence, taken as a whole, clearly amounts to "substantial evidence." It is not this Court's function to reweigh the evidence, but merely to determine whether or not thre was substantial evidence before the Commission upon which the Commission relied in support of its decision. It is clear, and it is this Court's holding that the Commission's decisions were supported by substantial evidence, as required by 5 U.S.C. § 706(2)(E).

### ORDER

For the reasons and on the grounds which more fully appear in the opinion of this Court filed simultaneously herewith, it is concluded that:

The Interstate Commerce Commission decision which dealt with Frostways, Inc., Extension—Bananas From Baltimore, granting the application of Frostways, Inc. to operate as a common carrier of bananas and exempted agricultural commodities (I.C.C. Docket No. MC–124170 (Sub-No. 26)), is correct as a matter of law.

It is ordered:

That the Interstate Commerce Commission decision which dealt with Frostways, Inc., Extension—Bananas From Baltimore, granting the application of Frostways, Inc. to operate as a common carrier of bananas and exempted agricultural commodities (I.C.C. Docket No. MC–124170 (Sub-No. 26)), be and the same is hereby affirmed.