**STATE ex rel. BEAUFORT TRANSFER COMPANY, Relator-Appellant,**

v.

**PUBLIC SERVICE COMMISSION of the State of Missouri Respondent-Respondent.**

**No. KCD 30593.**

Missouri Court of Appeals, Western District.

Dec. 31, 1979.

John E. Burruss, Jr., Hendren & Andrae, Jefferson City, for relator-appellant.

Herman W. Huber, Jefferson City, for intervenors St. Louis-Kansas City Express, Inc., and Overnite Transp. Co., respondent P.S.C. adopted intervenors' brief for their own.

Before SOMERVILLE, P. J., and PRITCHARD and MANFORD, JJ.

MANFORD, Judge.

This is a direct appeal from ruling and judgment by the circuit court upon two writs of review. The two cases were consolidated by agreement of the parties before the trial court.

Appellant has not technically complied with Rule 84.04(d) as the points relied upon in appellant's brief do not state briefly and concisely what rulings or actions by the trial court were allegedly erroneous and should be reviewed. However, this appears to be a case of first impression and is a matter of administrative review. The ar-

guments of the parties and the documents of record are sufficient to permit a review of the issues raised; and upon the belief that justice warrants review, this court proceeds herein pursuant to Rule 84.08.

Although there was oral argument before this court, the record of this case contains no testimony by witnesses; rather, it is limited to the pleadings, applications, orders and other written documents pertaining to issues as drawn.

Before considering the facts and points raised on appeal, it is necessary to identify the parties herein. There is no brief on file separate and distinct on behalf of respondent, Public Service Commission. The record shows respondent, in writing, notified this court, under date of May 22, 1979, that respondent, by reference, adopted the brief of intervenors as its own.[1] This case involves appellant, (Beaufort Transfer Company), St. Louis-Kansas City Express, Inc. and Overnite Transportation Company. These three parties are common carriers authorized to do business in Missouri. Respondent is the Missouri Public Service Commission.

On November 10, 1977, St. Louis-Kansas City Express, Inc. (hereinafter referred to as SKX) and Overnite Transportation Company (hereinafter referred to as Overnite) filed an application with the respondent, Public Service Commission (hereinafter referred to as the P.S.C.) for approval of transfer of all operating authority held by SKX to Overnite. SKX was the then holder of Certificate of Public Convenience and Necessity and Interstate Permit No. T–7. The application for transfer was made pursuant to § 390.111[2] and the published rules promulgated by the P.S.C. relative to transfers.

What gave cause to the application was that SKX and Overnite had entered into a sale/purchase agreement where, as purchaser, Overnite acquired the entire operation, both interstate and intrastate, of SKX.

Attached to the application to transfer was a copy of the sale/purchase agreement and Overnite's financial statement, corporate articles and certification to do business in Missouri. Within the body of the application was the declaration that the applicants had pending a request for approval of the sale and transfer of interstate authority before the Interstate Commerce Commission. The application also declared that when the applicants received I.C.C. approval, said approval would be filed with the P.S.C.

On November 15, 1977, appellant petitioned to intervene and to protest in the pending transfer application proceedings of SKX and Overnite. The petition, in summary, alleged that the approval of the transfer would deprive appellant of business and would interfere with appellant's ability to render transportation services, then being performed by appellant;[3] that SKX had failed to perform any service to a number of points within the area authorized to be served by SKX; that SKX had abandoned, discontinued and failed to service the areas designated under the certificate of authority; that since abandonment had occurred, a transfer of such authority would be inconsistent with the public interest and that by reason of the alleged abandonment, the certificate of authority of SKX should be amended, altered, suspended or revoked. The petition went further in requesting that SKX be required to show that it was a qualified carrier under and pursuant to Chapter 390, RSMo 1969. The petition prayed for a hearing before the P.S.C. on the allegations set forth in the petition.

On November 21, 1977, intervenors filed a motion to deny intervention and protest.

1. St. Louis-Kansas City Express, Inc. and Overnite Transportation Company became designated intervenors in the Circuit Court after they were granted leave to intervene in the two cases of writs of review.

2. All statute references are to RSMo, 1969.

3. It must be noted appellant, prior to the filing of the application to transfer, had been granted temporary authority to provide services in much of the same area designated in the certificate of authority possessed by SKX. This temporary authority was later made permanent by authority of the P.S.C.

On November 22, 1977, a petition to intervene was filed by Orscheln Brothers Truck Lines, Inc. and Waller Truck Company, Inc. On December 15, 1977, intervenors filed a motion to deny the second petition to intervene. On December 21, 1977, by a transmittal letter, intervenors advised respondent of Overnite's I.C.C. authorization to lease and temporarily control SKX. Subsequently, a copy of the I.C.C. order was filed with the respondent.

On December 29, 1977, respondent issued an order approving intervenor's application to transfer and denied the petitions to intervene filed by appellant, Orscheln and Waller. No hearing was held relative to the petitions to intervene.

This was the order of events relative to appellant's petition to intervene.[4] Simultaneously, with the petition to intervene, appellant filed a second action in the nature of a complaint against SKX with respondent.[5]

This complaint, in summary, alleged appellant was authorized to service many of the same areas as SKX; that appellant was granted temporary authority to serve such areas and that appellant had requested the granting of permanent authority to service these areas. The complaint continued by alleging SKX had abandoned service to the prescribed areas; that appellant had expended large sums of money, effort and time in providing service to said areas and that by virtue of the failure of SKX to service said areas, the authority of SKX had become dormant and the authority of SKX should be cancelled and revoked pursuant to § 390.106.

On November 17, 1977, appellant filed a motion to consolidate the case upon petition to intervene and the case upon complaint. SKX filed a reply to the motion to consolidate. On November 23, 1977, a petition to intervene on behalf of appellant in the complaint case was filed by Orscheln and Waller.

A copy of appellant's complaint was served upon SKX by respondent with directions from respondent to SKX to answer the complaint or satisfy the allegations contained in the complaint within 30 days.[6]

On December 15, 1977, SKX filed its answer to the complaint denying the allegations of the complaint but admitting to a curtailment of services for a limited period of time. It was stated that this curtailment was the result of labor problems, financial difficulties, the resignation of the general manager and the ill health of the company president.

The answer also stated SKX had handled all claims and correspondence, maintained proper insurance filings, participated in tariffs and to the knowledge of SKX, had maintained a good standing with the P.S.C.

Respondent P.S.C., on December 29, 1977, issued two orders. Both orders were issued without hearing. The first order approved the transfer application of intervenors and denied the petition to intervene of appellant, Orscheln and Waller. The second order denied appellant's complaint and the petition to intervene in the complaint case by Orscheln and Waller.

Appellant filed a motion for rehearing on both cases and that motion was denied by respondent on January 16, 1978. Appellant then filed two writs of review in the circuit court of Cole County.[7] Orscheln and Waller did not join in the writs of review and are not parties to this appeal.

The circuit court entertained oral arguments on the writs. The arguments are not set forth on the record, but the record reflects the following entry under date of August 9, 1978:

4. This case was designated P.S.C. Case No. T–7 upon respondent's docket.

5. This case was designated as Case No. T40,435 upon respondent's docket.

6. Authority for such procedure by respondent P.S.C. is to be found in Rule 4 C.S.R. 240–2.-070(7), which was followed by respondent herein.

7. These writs were docketed No. 30107 and 30108 upon the record of the circuit court of Cole County. Subsequently, by agreement of the parties, the cases were consolidated.

"Parties appear by their respective attorneys. Cases argued. Taken under advisement."

The circuit court then entered its judgment under date of October 26, 1978, finding all issues in favor of respondent and against appellant. The court, in its judgment, found that the procedure for sale and transfer of a certificate issued by the Public Service Commission is governed by § 390.111 and that the sole question is the determination by the Commission as to whether or not the transferee, in all respects, is qualified to conduct the business of a carrier. The court further concluded that the P.S.C., upon the application and documents, found the transferee was qualified. The court further concluded that the sole responsibility of transferring certificates is within the discretion of the P.S.C. and the statute does not create any interest or right in competing carriers and does not require or necessitate a hearing. The court found the order of the P.S.C., in approving the transfer upon intervenors' application, was a proper exercise of discretion of the P.S.C. and that appellant had no standing to intervene and was not entitled, as a matter of right, to a hearing on its petition to intervene.

The court made further finding relating to the writ of review upon the case based on complaint. The court concluded the statute applicable to the question is § 386.330. The court found that the procedure set forth in § 386.330 was followed by the Commission, that the complaint was without merit, that appellant was not entitled to any hearing as a matter of law, that appellant was not an aggrieved party and that the Commission (respondent herein) did not abuse its discretion.

Appellant first filed its brief and then filed a reply brief. Between the two briefs, appellant alleges error in that the refusal to allow appellant to intervene and protest the transfer of the certificate by way of dismissal of its petition without hearing was a capricious, unreasonable and unlawful act. The appellant alleges further error in that the judgment entered fails to take into account that the questioned certificate was dormant because of the abandonment by intervenor SKX, and because of such circumstances, the judgment is against existing law.

Appellant and intervenors are participants in a highly competitive business. Such business has been held for many years to be coupled with a strong public interest. As a result of the public interest, this business has been and continues to be highly regulated by federal and state law.

■ The regulatory authority over the transportation business in Missouri is the Missouri Public Service Commission or the P.S.C. The P.S.C. is a creature of the legislature, deriving all of its power and authority from the statute law of our state, *State ex rel. Springfield Warehouse & Transfer Co. v. P.S.C.*, 240 Mo.App. 1147, 225 S.W.2d 792 (1949). This statutory genesis also extends authorization for the promulgation of rules and orders consistent with the statutes for the express purpose of conducting the day-to-day operation of the P.S.C. and to carry out the intended purpose of the P.S.C.

This case sharply draws into focus specific questions which heretofore have not been answered fully by our courts. These questions are:

■ (1) Is the P.S.C. required to determine if a certificate of convenience and necessity is dormant prior to authorizing transfer of full authority under such certificate pursuant to § 390.111 and 4 C.S.R. 240–110?

§ 390.111 reads as follows:

"390.111 CERTIFICATE OR PERMIT TRANSFERRED TO PURCHASER, ASSIGNEE OR CONSOLIDATED COMPANY, WHEN.—1. In the event a motor carrier, to which a certificate or permit shall have been issued under the provisions of sections 390.011 to 390.176, shall sell, transfer, or assign the business, rights or assets of such motor carrier, or any part thereof, and such motor carrier and the purchaser thereof shall make proper application to the commission in

writing, containing such information as shall be prescribed by the commission by general order with respect to the transfer of certificates or permits, the commission shall transfer such original certificate or permit issued to such motor carrier, or the part so sold to such purchaser, if the commission shall determine that the purchaser is in all respects qualified under the provisions of sections 390.011 to 390.-176 to conduct the business of a motor carrier within the meaning of sections 390.011 to 390.176, and upon the transfer of such certificate or permit it shall be effective in like manner as though originally issued to such purchaser; provided, however, the commission shall not be required to transfer from a certificate authorizing the transportation of general commodities or freight, any portion of such certificate authorizing the transportation of a part of such general commodities or freight over the same route or within the same territory, unless the commission shall further determine, after hearing upon due notice, that such transfer is consistent with the public interest.

2. When there is a consolidation of one or more certificates as the result of a transfer of operating rights, and when the commission shall find that any through service made possible thereby will be beneficial to the public, such through service may be authorized."

From a reading of the statute, the answer to this first question must be in the negative. § 390.111 does not impose any duty upon the P.S.C. to determine the question of dormancy when the transfer encompasses the entire authority under the certificate.

§ 390.111, as first interpreted by *State ex rel. Springfield Warehouse & Transfer Co. v. P.S.C., supra,* held that the approval of transfers of certificates, whether the transfer was partial or in its entirety, was solely within the discretion of the P.S.C. Upon a finding that the transferee was qualified, the P.S.C. was required, as a matter of law, to approve the transfer.

Subsequent to the *Springfield Warehouse* case, § 390.111 was amended to limit the transfer of a certificate without hearing to such a transfer which included all or the entirety of the authority under the certificate. The change in the statute, which has become known as the "proviso", reads as follows:

". . . however, the commission shall not be required to transfer from a certificate authorizing the transportation of general commodities or freight, any portion of such certificate authorizing the transportation of a part of such general commodities or freight over the same route or within the same territory, unless the commission shall further determine, after hearing upon due notice, that such transfer is consistent with the public interest."

This change by the legislature was noted and held applicable in the case of *State ex rel. Transport Delivery Co. v. P.S.C.,* 414 S.W.2d 322 (Mo.App.1967) where the court, in dealing with the transfer of less than full authority of a certificate, succinctly pointed out the P.S.C. could conduct a hearing upon the issue, and the decision of the P.S.C. must be that such transfer is consistent with the public interest and that the decision must be based upon evidence before the P.S.C.

The rationale to be found in both *Springfield Warehouse & Transfer Co. v. P.S.C.* and *State ex rel. Transport Delivery Co. v. P.S.C., supra* is sound when weighed against the language of § 390.111. The rules to be found within the foregoing decisions are applicable to two situations. First, in a situation where a certificate is fully transferred, such transfer is a transfer of authority for general commodities or freight. Second, where a partial transfer occurs, this calls for a "splitting" of such a general commodities or freight authority.

In *State ex rel. Transport Delivery Co. v. P.S.C., supra,* the court declared, at 326–327:

"This proviso was added to the statute after the decision of this court in *State ex rel. Springfield Warehouse and Transfer*

*Company v. Public Service Commission,* 240 Mo.App. 1147, 225 S.W.2d 792, wherein it was held that the Commission was required as a matter of law to approve a transfer upon finding that the transferee was qualified to perform the services under such transferred authority. See also *State ex rel. Gehrs v. Public Service Commission,* 232 Mo.App. 1018, 114 S.W.2d 161. This proviso takes away the right to transfer a portion of a certificate authorizing the transportation of general commodities, as a matter of law. It does not require the Commission to hold a hearing on the transfer but on the other hand it does not require the Commission to permit the transfer on a showing only that the transferee is qualified. It authorizes the Commission, in its discretion, to hold a hearing on the question of whether or not the proposed transfer 'is consistent with the public interest' and the statute requires the Commission to permit the transfer only where it finds that the transfer will be 'consistent with the public interest.' The Commission, by its order of January 6, 1965, exercised its discretion and determined that there should be a hearing on the question of whether or not the proposed transfer was 'consistent with the public interest.' This order remains undisturbed and under it the Commission may only permit the transfer if it makes such finding and before it can make such finding, there must be evidence before it to support that finding. See *State ex rel. City of West Plains v. Public Service Commission,* Mo.Sup., 310 S.W.2d 925; *Videon Corp. v. Burton,* Mo. App., 369 S.W.2d 264."

■ In the case where there is a partial transfer producing a "splitting" of the general commodities or freight authority, there must be a finding that the P.S.C. ruling is supported by competent and substantial evidence to establish that such transfer is consistent with the public interest. Such a ruling by the P.S.C. is reviewable by the court pursuant to Rule 100. No such requirement is applicable in the case of a transfer of full authority, because under the statute as construed in the case of *Springfield Warehouse & Transfer Co. v. P.S.C., supra,* such transfer occurs as a matter of law when approved by the P.S.C. Parties are, of course, entitled to a review of such action by the P.S.C. to determine if this ruling was in conformity with the statutory law of our state. See Rule 100.03.

Appellant argues it would be ridiculous to transfer a certificate which was dormant, and in support of that position, cites decisions from some of our sister states on the issue. Re Lee B. Hawkins, 39 PUR (N.S.) 417 (Cal.R.R.Comm.1941) was a decision where a certificate for general commodities was utilized only for purposes of hauling lumber. The California authorities held the transfer would be accomplished only to the extent it was applied to the right to haul lumber products, thus concluding the holder had abandoned remaining use under the certificate and hence that "unused" portion was dormant.

Re Moyer, 59 PUR (N.S.) 322 (Pa.U.C. 1945) was a case which created new law in Pennsylvania, holding that public necessity need not be proven, but if a certificate had been dormant, then there needed to be additional proof on the issue of public necessity. It should be pointed out that the Pennsylvania Utility Commission follows certain procedures requiring an applicant for transfer to demonstrate that he had rendered continuous service under his certificate. No such requisite is to be found within our statutes.

■ Appellant further argues and correctly so, that the question of dormancy is a question determined by the I.C.C. relative to requests for transfer. Appellant cites *Wright Trucking Inc. v. U. S.,* 403 F.Supp. 119 (D.C.Mass.1975). The statutory source for such policy is to be found in 49 U.S.C., § 5(2).[8] This section, however, reads to allow such transfers "with the approval and

8. This section has been repealed, reworded in clearer language and reenacted. See 49 U.S. C.A. § 11344(c) (1978).

authorization of the (I.C.C.) Commission . . . (if) consistent with the public interest."

Under the federal law as interpreted in *Wright Trucking, Inc. v. U. S., supra*, dormancy, as an issue, has been "read into" the federal statute. The rationale of such an approach was that if a carrier's activity had become minimal or non-existent, area shippers were presumed to be receiving adequate service from other carriers to meet their needs. The purchaser of a dormant certificate, or the transferee, was viewed as an aggressor seeking to expand the previous carrier's relinquished business. The federal interpretation has concluded that the permission to transfer dormant interests would incite a struggle to the damage of public interest. See *Arrow Transportation Co. v. U. S.*, 300 F.Supp. 813 (D.C.R.I. 1969).

While the above policy has been adopted as relative to I.C.C. approval, the concept of dormancy and the decisions based thereon have been shown to be flexible. It has been held the I.C.C. can transfer dormant interests if found to be in the public interest, see *Gateway Transportation Co., Inv. v. U. S.*, 371 F.Supp. 180 (W.D.Wis.1973). That the federal courts have approved this I.C.C. rule interpreting the authority of the I.C.C., see *Rogers Cartage Co. v. I.C.C.*, 595 F.2d 379 (7th Cir. 1979).[9]

Other states have considered the question of dormancy, but such action was based upon statutory authority, *Brown Express Inc. v. Railroad Commission*, 415 S.W.2d 394 (Tex.1967); *Application of E. & B. Rigging & Transfer, Inc.*, 191 Neb. 714, 217 N.W.2d 813 (1974); *Ruan Transport Corp. v. Iowa State Commerce Commission*, 182 N.W.2d 641 (Iowa 1970); *Massachusetts Furniture and Piano Movers Assoc. v. Department of Public Utilities*, 350 Mass. 563, 215 N.E.2d 769 (1966) and *Fisher v. Branscum*, 243 Ark. 516, 420 S.W.2d 882 (1967).

■ While the I.C.C. had adopted a flexible policy on the question of dormancy relative to transfers, and other states, by direct statutory authority or interpretations of their statutes have ruled dormancy is an issue, none of these authorities are controlling or persuasive when weighed against the reading of § 390.111.

■ If the economics of today dictate that dormancy is to be decided prior to approval of a transfer of full or general commodity authority, then the statute must be amended to include such consideration. This falls to the judgment of the legislature.

■ The statute, as now constructed, invests the power in the P.S.C. to take up an application for transfer of full authority under a general commodities certificate and to determine the qualifications of the proposed transferee, then causing the certificate of authority to be transferred.

This court can find no expressed or inferred reason to extend the statute by an addendum requiring determination of the issue of dormancy by the P.S.C. Such extension would carry the intent of the legislature well beyond that to be found in the statute.

■ (2) Are competing carriers entitled to intervene and as a matter of right, are they entitled to be heard by the P.S.C. upon the issue of transfer of full authority under a general commodities certificate?

Under § 390.111, the answer is no. This statute has been interpreted to mean no hearing is required, *State ex rel. Transport Delivery Co. v. P.S.C., supra*. Such interpretation has been made by the adoption and enforcement of 4 C.S.R. 240–110(11). See *State ex rel. Philipp Transit Lines, Inc. v. P.S.C.*, 523 S.W.2d 353 (Mo.App.1975) where the court held the rules of the P.S.C. must be consistent with the statutes of Missouri.

■ If the P.S.C. sets a matter for hearing, then intervention is permissive, see

9. It must be noted herein that intervenors received approval of the I.C.C. for temporary control of SKX by Overnite.

§ 386.420. This is the only reference to intervention in Chapters 386 and 390, RSMo 1969. Also see *State ex rel. Brink's Inc. v. P.S.C.*, 535 S.W.2d 582 (Mo.App.1976).

Appellant's contention, premised upon dormancy of the certificate of the transfer-or (intervenor SKX herein) regarding the right to intervene, is without merit both under § 390.111 and the cases interpreting said statute. The record clearly shows the P.S.C. herein acted within and pursuant to the provisions of § 390.111 regarding the approval of the transfer and the dismissal of appellant's petition to intervene.

■ (3) Are competing carriers entitled to file complaints and be entitled to a hearing upon said complaint as a matter of law?

Determination of this last question falls within the dictate of § 386.330, which reads as follows:

"386.330. INVESTIGATIONS — Complaints To The Commission.—1. The commission may, of its own motion, investigate or make inquiry, in a manner to be determined by it, as to any act or thing done or omitted to be done by any common carrier, railroad corporation or street railroad corporation, or by any telegraph corporation or telephone corporation, subject to its supervision, and the commission shall make such inquiry in regard to any act or thing done or omitted to be done by any such corporation in violation of any provision of law or in violation of any order or decision of the commission.

2. Complaints may be made to the commission by any person or corporation aggrieved, by petition or complaint, in writing, setting forth any thing or act done or omitted to be done by any common carrier, railroad corporation or street railroad corporation, or by any telegraph corporation or telephone corporation, in violation, or claimed to be in violation, of any provision of law or of the terms and conditions of its franchise or charter or of any order or decision of the commission. Upon the presentation of such a complaint the commission shall cause a copy thereof to be forwarded to the person or corporation complained of, which may be accompanied by an order, directed to such person or corporation, requiring that the matters complained of be satisfied, or that the charges be answered in writing within a time to be specified by the commission. If the person or corporation complained of shall make reparation for any injury alleged and shall cease to commit, or to permit, the violation of law, franchise, order or decision charged in the complaint, and shall notify the commission of that fact before the time allowed for answer, the commission need take no further action on the charges. If, however, the charges contained in such petition be not thus satisfied, and it shall appear to the commission that there are reasonable grounds therefor, it shall investigate such charges in such manner and by such means as it shall deem proper, and take such action within its powers as the facts justify.

3. Whenever the commission shall investigate any matter complained of by any person or corporation aggrieved by any act or omission of a common carrier, railroad corporation or street railroad corporation or telegraph corporation or telephone corporation, under this section, it shall be its duty, within sixty days after final submission, to make and file an order either dismissing the petition or complaint or directing the common carrier, railroad corporation or street railroad corporation, or telegraph corporation or telephone corporation complained of to satisfy the cause the complaint in whole or to the extent which the commission may specify and require."

Under this statute, the word "may" is used to indicate that persons claiming a grievance may apply by petition or complaint to the P.S.C., setting forth such grievance. Further, under this statute, when such complaints are taken, the P.S.C. is then required to send a copy of the complaint to the utility charged under the complaint. The statute further provides that the P.S.C. is not required to take any further action if notification to the P.S.C. is

given, reparation of any injury alleged has been made and such acts or omissions alleged in the complaint have ceased prior to the time prescribed for filing an answer to the complaint.

The statute goes further and invests the P.S.C. with the discretion as to whether the utility responding to the complaint has satisfactorily answered the charges in the complaint. If the P.S.C. is satisfied, no further action is required of the P.S.C.

If the response from the utility complained of is not satisfactory to the P.S.C., the P.S.C., in its discretion, may investigate and take such action in the matter as it deems proper.

The case herein shows appellant filed its complaint with the P.S.C. The P.S.C. notified intervenor, SKX, and a reply was filed with the P.S.C. by SKX. From the record, it must be concluded the P.S.C. found the reply from SKX to be satisfactory and from the fact that SKX maintained a position of good standing with the P.S.C., the complaint was dismissed.

█ There is nothing in this statute to require or insure a hearing upon any complaint. The statute, as constructed, provides the P.S.C. with discretionary disposition of complaints. If, in the discretion of the P.S.C. the allegations of a complaint have not been corrected, the P.S.C. shall proceed further in the matter and take such action it deems proper. The converse of the situation is that if upon reply, within the discretion of the P.S.C, the allegations in a complaint have been met, the P.S.C. need proceed no further. From this last statutory provision, it must follow that the action taken by the P.S.C. relative to the complaint of appellant was a proper exercise of its authority under § 386.330 and that appellant was not entitled to any hearing before the P.S.C. as a matter of law if, upon review, it is determined that such action by the P.S.C. was not an abuse of its discretion.

█ When appellant filed its complaint, it alleged the certificate of SKX was dormant, that appellant was authorized to serve the particular area under consideration and that appellant was an aggrieved party. Upon receipt of the complaint, the P.S.C., pursuant to the statute and its rules, made inquiry of SKX about the allegations in the complaint. The P.S.C. concluded, based upon its inquiry, that there was no merit to the allegations of appellant's complaint, that SKX was in good standing and undertook to dismiss appellant's complaint. There is nothing in the record before this court to establish the P.S.C. abused its discretion in dismissing the complaint of appellant.

The contention by the appellant that the dismissal of its complaint by the P.S.C. was a capricious, unreasonable and unlawful act is not supported by the record herein and is found to be without merit.

█ Once again, if present economic or social conditions dictate that complaints of competing carriers should be received by the P.S.C., and such carriers are entitled as a matter of law to a hearing upon those complaints, such provision for same must be manifested by amendment to the statutory laws of our state through the collective judgment of the legislature. This same change or provision is necessary when applied to a petition to intervene in the case of a transfer of full authority of or under a certificate of authority.

█ There is nothing in Chapters 386 and 390, RSMo 1969, as presently worded, which, as a matter of law, provides for the relief sought by appellant, and it would be patently incorrect to impress upon our statutes the intent that complaints and petitions to intervene must be received and hearings conducted relative thereto as a matter of law, when the statutes as presently worded neither expressly provide nor inferentially suggest such a procedural or substantive requisite.

The record herein shows the respondent P.S.C. acted within and pursuant to § 390.-111 and that such action was not violative of the law regarding the approval of the transfer between SKX and Overnite and the dismissal of appellant's petition to intervene.

The record herein shows the respondent acted pursuant to § 386.330 and that upon the record of this case, the dismissal of appellant's complaint was not an abuse of discretion by respondent.

For the foregoing reasons, the judgment of the trial court is in all respects affirmed.

All concur.